RAYMOND BIALECK ET AL. *v.* CITY OF HARTFORD

MALTBIE, C. J., BROWN, JENNINGS, ELLS and COMLEY, Js.

Argued April 7—decided May 31, 1949

*William J. Galvin, Jr.,* and *James N. Egan,* for the appellants (plaintiffs).

*Frank A. Murphy,* assistant corporation counsel, with whom were *Samuel Gould,* assistant corporation counsel, and, on the brief, *Franz J. Carlson,* corporation counsel, for the appellee (defendant).

JENNINGS, J.  The Hartford board of education in 1946 voted, "subject to receipt of necessary additional funds," to pay each teacher a cost of living adjustment of $450. It requested an appropriation for that purpose from the city council.  This was refused.  The basic question is whether the teachers have an enforceable contract for the $450.  The statement of facts is facilitated by two factors.  None of the findings of fact are disputed.  Most of the requests to have paragraphs of the draft finding added to the finding are abandoned. The rest are, in the main, either substantially included in the finding or immaterial.  The plaintiffs are entitled to have the gravity of the emergency facing the city and the teachers emphasized, and the following summary recognizes this fact.

The plaintiffs represent numerous teachers of more than ten years' experience in the Hartford public schools.  They are now serving under the board of education and served under the former district system. They were originally appointed to teach during the pleasure of the board and received a statement of their salary annually, on or about April 1.  In 1945 a tenure act was passed.  24 Spec. Laws 683.  Thereafter, regularly appointed teachers had permanent positions and could be dismissed only for cause.  They could resign at any time.

In the fall of 1946 there was a definite and sudden

rise in the cost of living. The plaintiffs believed that they needed and should receive increased compensation. The matter was discussed in their associations and with the board of education. The board of education was deeply concerned about the possible effect upon the school system of the plaintiffs' dissatisfaction with their pay. These negotiations culminated in the passage of the following vote by the board of education on November 12, 1946: "[1] That subject to receipt of necessary additional funds, a cost of living adjustment of $450 be provided for all roster and continuous employees to be paid in equal monthly installments from the date that funds become available to March 31, 1947; [2] That from December 1, 1946, subject to receipt of necessary additional funds all evening school teachers be placed on a schedule ranging from $5.00 to $6.50 per night; [3] That the Board request from the Court of Common Council an appropriation of $525,000 to meet the cost of the above cost of living adjustment through March 31, 1947."

At this time the board of education faced a deficit of $68,000 in its appropriation, so there were insufficient funds in its budget to meet the increase requested. It forwarded a copy of the vote to the city council. A draft resolution appropriating $525,000 to the board of education accompanied the vote. The council referred the matter to the board of finance the same day. On December 23, the board of finance recommended to the council the appropriation of $700,000 to provide a cost of living adjustment of $240 per year to each full time employee of the city, including employees of the board of education. The council adopted the recommendation, appropriated the sum named and directed the board of finance to allot it so as to accomplish the stated purpose. The council did not pass the draft

resolution proposed by the board of education appropriating $525,000. The appropriation made resulted in a budgetary deficit equivalent to two and one-half mills on the tax list of the city in its accounts for the fiscal year. No further action was taken by the council or board of finance in regard to this matter, with the exception of the necessary financing. This suit was brought before any payments were made. The $240 was subsequently paid, but the payment was neither made nor accepted in full satisfaction of the plaintiffs' claims for $450 each.

From November 12, 1946, until January 14, 1947, the date of this writ, the teachers, their committee and counsel labored with the board of education, the council and the board of finance to secure the appropriation requested by the board of education. On December 19, 1946, for example, the teachers' professional committee was empowered in its discretion to declare a cessation of work if the board of finance and the city council did not meet the request of the teachers. There was talk of a strike. The board of education, on January 16, 1947, adopted a statement that it would continue its earnest efforts on behalf of its employees as long as they continued to discharge their duties to the community, but that, whatever the cause, there could be no strike against the children of Hartford. Both before and after action by the city council, the board of education did everything in its power to secure the appropriation requested. It is unnecessary to discuss these efforts in detail. They were ineffective.

The trial court concluded, in effect, that the council was the sole authority which had the power to provide additional appropriations after the budget was fixed; that the board of education did not have the power to grant the adjustment of $450, because it would have

exceeded its appropriation; that the vote of November 12 was at most an offer to pay this adjustment on condition that additional funds were appropriated by the council; and that the board of education did not promise to give the plaintiffs the adjustment unconditionally at any time subsequent to November 12. It further concluded that the board of education made strenuous efforts to secure the additional funds and that the council used sound judgment and acted from proper motives and with full understanding of the facts.

The plaintiffs conceded in oral argument that the increase voted must be reasonable and that the power of the board of education to fix salaries is not absolute. This is an important limitation on the powers of the board. It is difficult to ascertain the precise claim of the plaintiffs from their brief. Perhaps the analysis of the trial court is as clear and inclusive as can be made. "The plaintiffs' theory, by which they claim to recover, is that the . . . facts show that the votes of the Board of Education constituted an offer of $450. to each teacher, which offer was to be accepted by an act, i. e., the continued performance of each teacher's duties; that the offer was so accepted and a contract with each of the plaintiffs resulted therefrom; that the Board of Education had the power to make such contracts, whether or not it had or could obtain sufficient funds to carry them out."

The plaintiffs have no standing on the pleadings. The complaint reads "On the 12th day of November, 1946 the Board of Education of . . . Hartford entered into a contract . . . with . . . various members of the Hartford Teachers' League and Council . . . a copy of which contract is hereto annexed marked as Exhibit A." Exhibit A is the vote passed on November 12 and quoted above. It is not a contract. If it be assumed

that it was an offer accepted by the plaintiffs, the next question is whether it was conditional. It hardly seems necessary to argue that it was. The condition appears on its face. A cost of living adjustment is to be provided subject to the receipt of "necessary additional funds." It is "to be paid in equal monthly installments from the date that funds become available. . . ." The existence of the condition is emphasized by the request for an appropriation. The condition was not fulfilled; that is, the money was not appropriated. An enforceable contract never came into existence. *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 A. 277; *Booth* v. *Booth & Bayliss Commercial School, Inc.,* 120 Conn. 221, 228, 180 A. 278; *Mitchell* v. *Wyckoff,* 122 Conn. 48, 59, 186 A. 709; Restatement, 1 Contracts § 257.

The plaintiffs' next claim is that, even though the offer was conditional when made, subsequent acts of the board of education made it absolute. The finding affords no factual support for this claim. The acts of the teachers and the board have been briefly related. They were solely directed to the securing of the additional appropriation from the council. This situation may not conclude the plaintiffs but it is an important indication of their attitude at the time. Both parties clearly felt that an appropriation was necessary. The conclusion which decides the case is that neither the defendant nor the board of education agreed unconditionally to pay the plaintiffs an additional $450 if they continued teaching. If this had been done a very different question would have been presented. The final argument of the plaintiffs, that the board had the power to vote the payment even though the necessary funds had not been appropriated, is irrelevant to the factual situation. If it be assumed that the board had this power, it made no attempt to exercise it.

A few of the cases on which the plaintiffs chiefly rely will be briefly noticed. *O'Brien* v. *Pittsfield,* 316 Mass. 283, 55 N. E. 2d 440, is an example of the cases cited from other states. On its face it strongly supports the plaintiffs' position. On examination, however, it is found to be based on a Massachusetts statute which required a city council to make an appropriation, in accordance with the estimates of the school committee, of a sum sufficient to provide for an increase in teachers' salaries. In *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 135 N. E. 459, the amount sought was within the appropriation already made for school purposes. *State ex rel. Marsh* v. *Lum,* 95 Conn. 199, 111 A. 190, decided that a complaint based on a contract similar to that sought to be established in the case at bar stated a sufficient consideration and was not forbidden by the constitution; no condition was involved and no question was raised as to the availability of funds at the disposal of the school committee to pay the increased compensation. *Groton & Stonington Traction Co.* v. *Groton,* 115 Conn. 151, 160 A. 902, is frequently cited to the point that boards of education are not subject to the control of boards of finance. This is not true as a general statement. In the *Groton* case the board of finance attempted to prevent the board of education from carrying out a duty imposed by law by refusing any appropriation for that purpose. It was held that a town could not escape its legal obligations in this way. The true and sufficient rule established by that case is stated in *Board of Education of Stamford* v. *Board of Finance,* 127 Conn. 345, 350, 16 A. 2d 601.

If the board of education had unconditionally voted the increased compensation, we would have to consider the question whether, under the charter of the city then in effect, it had authority to determine the compensa-

558

tion of teachers even though no appropriation was available out of which the payments could be made. See 23 Spec. Laws 1262, §§ 189, 190. It did not pass such a vote, and these sections do not apply. The new Hartford charter contains a clear definition of the budgetary limitations on the board of education; 25 Spec. Laws 51, §§ 5-10; p. 54, § 16; p. 81, § 1; and the question has become moot.

There is no error.

In this opinion the other judges concurred.