**BENES, Plaintiff-Appellant, v. HICKOX BLDG. CO.,
Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21340.   Decided October 17, 1949.

J. J Tetlow, W. J. Tetlow, Cleveland, for plaintiff-appellant.
Krueger, Gorman & Davis, Cleveland, for defendant-appellee.

## OPINION

By McNAMEE, J:

The parties will be referred to as they appeared in the common pleas court.

This is an appeal on questions of law from a judgment of the common pleas court in favor of the defendant, entered at the close of plaintiff's evidence. Six assignments of error have been filed but a determination of the principal issue, whether the trial court erred in holding that plaintiff failed to establish a prima facie case for damages for breach of contract, will be dispositive of this appeal.

Plaintiff's suit is for loss of profits claimed to have been occasioned by the defendant's alleged wrongful repudiation of a building contract after the plaintiff had commenced work thereunder. The facts essential to an understanding of the decision herein reached, are:

Plaintiff is a building contractor; defendant is the owner of premises located at the northwest corner of Euclid Avenue and East Ninth Street in the City of Cleveland upon which formerly was situated the Hickox Building. At the time the contract between plaintiff and defendant was executed, and pursuant to the terms of a long term lease between the defendant as lessor and Bond Stores Inc., (hereinafter referred to as "Bond") as lessee, the Hickox Building was being razed to permit the construction of a commercial building specially adapted for the use and occupancy of Bond. By the terms of the lease the defendant and Bond each were to bear a portion of the cost of the construction of the new building. On March 22, 1946, plaintiff and defendant entered into a written contract for the construction of the commercial building in question. The contract which was prepared and drafted by defendant, provides that plaintiff as contractor "shall furnish all necessary labor and materials required to perform and shall perform all of the work shown on the drawings entitled 'Building for Bond Stores, Inc., Euclid Avenue and East 9th Street, Cleveland, Ohio' (except such portions of the work as are specifically excepted from the scope of this contract by the provisions of Section 1 of Article I thereof) as prepared by Walker & Weeks, Architects, hereinafter called the 'Architect' whose address is 1240 Huron Road, Cleveland, Ohio."

The items specifically excepted from the scope of the contract are:

1. Plumbing work
2. Heating and Air Conditioning work
3. Electrical work
4. Elevators
5. Pneumatic tube system
6. Sprinkler system

The defendant, however, reserved the right to include any part or all of these excepted items within the scope of the work to be performed by the contractor. It was further provided that in no event was the contract to include:

(a) The demolition of the existing structure known as The Hickox Building

(b) Furnishing of the structural steel

(c) Furnishing and installation of the store fixtures and equipment.

Article II of the Contract under the caption "Commencement of the Work and Time for Completion thereof" provides in part as follows:

"The Contractor shall commence work on the foundations at once and shall proceed with the same as rapidly as permitted by the progress of the work of demolition of the Hickox Building. The Contractor shall commence the balance of the work covered by this Contract forthwith upon the approval of this Contract by Bond, and the deposit with the Disbursing Agent, in accordance with the provisions of Section 3 of Article I of the aforesaid lease, of the cost of the new building.

All work covered by this Contract shall be completed by the Contractor within one hundred (100) working days after the first delivery by the Owner to the Contractor of structural steel. * * *."

The provisions for payment to the Contractor are upon a "cost plus" basis. By the terms of the Contract plaintiff was to receive reimbursement for the funds expended by him for the cost of the work, together with a fee for his services. The governing provisions in respect to the contractor's compensation read:

"Section 1. The owner shall pay the contractor for the performance of this contract, in current funds as follows:

(a) The cost of the work performed by the contractor hereunder as such cost is defined and restricted by the provisions hereinafter contained in Section 2 of this Article III; and

(b) The Contractor's fee which shall be Twenty-Five Thousand Dollars ($25,000.00) plus an amount equivalent to Five Percent (5%) of the cost as defined and restricted in Section 2 of this Article III, of such of Items (1) to (6) inclusive, as set forth in Section 1 of Article I hereof, as the Owner, in accordance with the provisions of said Section, causes to be included in the work covered by this Contract; provided, however, in no event shall such additional fee of the Contractor exceed Ten Thousand Dollars ($10,000.00) and provided, further, anything in this Contract to the contrary notwithstanding, if this Contract is not approved by Bond, then the Contractor's fee shall not exceed Five Percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the Contractor hereunder."

At the end of the contract appear the following:

"New York, New York,      1946
The foregoing Contract is hereby approved.
             BOND STORES INCORPORATED
                   By_____."

It does not appear that the contract was approved by Bond.

At the trial, plaintiff introduced the contract in evidence and by his own testimony established that he commenced work on the foundation forthwith. After performing a small part of the foundation work, plaintiff was required to discontinue the same because of danger to workmen, occasioned by the razing of the Hickox Building.

Pursuant to the terms of the contract, plaintiff billed defendant for the cost of the work performed on the foundation, amounting to $161.01 plus five percent or a total of $171.16. This amount was paid by the defendant.

No claim is made that this stoppage of work on the foundation was due to any breach of the contract by plaintiff. Immediately following the suspension of the work on the foundation, plaintiff and the president of the defendant company visited the offices of the Civilian Production Administration where a conference was had in respect of the manner of complying with the regulations of the C. P. A. At that conference, plaintiff was introduced by the president of the defendant company as the "contractor on the job." Following this, plaintiff made the necessary calculations and prepara-

tions for a resumption of the work. Plaintiff was at all times ready, willing and able to proceed with the work, but defendant denied him access to the premises and refused to permit plaintiff to proceed with the performance of the contract.

On or about July 15, 1946, defendant entered into another contract with The Higley Construction Company for the constructiion of the same building. The building was completed by Higley at a cost of $909,641.44. The sum of $910,000.00 was deposited with the Disbursing Agent. $400,000.00 of this amount was deposited by defendant on July 15, 1946, and the balance of $510,000.00 by Bond at various times during the progress of the construction of the building by Higley.

Bond's failure to approve the contract is the only reason assigned by defendant for its action in preventing plaintiff from completing the construction of the building. Plaintiff claims that the failure of Bond to approve the contract did not impair or defeat his contractual right to construct the building, but merely limited his stipulated fee of $25,000.00 to a sum not in excess of five percent of the cost of the work performed under the contract. He relies upon the contract in its entirety but particularly upon the following language in Section 1-(b) of Article III:

"* * * and provided further, anything in this Contract to the contrary notwithstanding, if this Contract is not approved by Bond, then the Contractor's fee shall not exceed five percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the Contractor hereunder."

Defendant also relies in large part upon the same provisions of the contract as justifying its refusal to permit plaintiff to perform the balance of the work, contending that Bond's non-approval of the contract operated to prevent plaintiff from proceeding further with the work and rendered defendant liable for no more than five percent of the cost of the work actually performed by plaintiff on the foundation. A correct answer to the question—What effect upon the contractual rights of the parties resulted from Bond's failure to approve the contract?—will resolve the issue here presented.

The cardinal rule of construction of written contracts is to ascertain the intention of the parties from a consideration of the language used by them. **9 O. Jur. 393, Sec. 170.**

Words in a written contract are to be interpreted according to their ordinary, common and usual meaning. **9 O. Jur. 395, Sec. 172.**

As stated by the Supreme Court in **Cincinnati S & C. R. Co. v. Indiana B & W. R. Co. 44 Oh St 287:**

"In construing a written agreement in which the parties claim the words and expressions contain their true intent and meaning, and there is no claim of fraud or mistake, there should be given to each word and expression that plain and obvious meaning which the context and the whole instrument require to make each part consistent with the whole and which will secure and carry into effect the object of the parties."

The object of the parties to the contract here considered was to secure, within the limitation of time and upon the terms therein set forth, the construction of a large commercial building designed and adapted to the use and purposes of Bond. The contract bears the marks of expert draftsmanship. It is notable for its clarity and preciseness of expression. Exceptions, reservations and provisos therein are set forth in clear and unambiguous terms. This is true also in respect of those provisions that declare the effect of the contingency of Bond's non-approval of the contract.

In the body of the contract there are but two references to its approval by Bond. In Article II, the approval of the contract by Bond and the deposit with the Disbursing Agent of the cost of the building are events fixing the time of the commencement of the "balance of the work" by the contractor. Nowhere in the contract is it expressly provided that Bond's approval thereof is a prerequisite to the effectiveness of the contract. Indeed any such provision would be inconsistent with the requirement that the contractor was to commence work on the foundation "at once." Nor may the language of Article II fairly be construed as meaning that Bond's approval of the contract was a condition precedent to plaintiff's performance of the "balance of the work." The absence of any prohibition against commencing the "balance of the work"—or the construction of the superstructure— prior to Bond's approval forbids such a construction. The evidence discloses that after a long period of negotiation the parties entered into a contract providing that plaintiff, with stated exceptions and reservations, was to do all the work

necessary to construct a complete building costing hundreds of thousands of dollars. To suppose, that without Bond's approval, this contract was effective only as to the foundation work, is an unreasonable assumption, entirely at variance with the expressed intent of the parties. Nor can it fairly be implied that Bond's approval was a condition precedent to the contractor's right to perform "the balance of the work." Any such presumed implication is completely negatived by the provisions in Article III of the contract which explicitly spell out the effect of Bond's failure to approve the contract as merely limiting the contractor's fee to an amount not to exceed five percent of the cost of the work performed by the contractor thereunder.

Defendant's argument that in the event of Bond's non-approval of the contract plaintiff was not to proceed with the balance of the work, and that in such event plaintiff's compensation was limited to five percent of the cost of the work done on the foundation, is in conflict with the express terms of Article III of the contract.

The first sentence of Article III reads:

"The Owner shall pay the Contractor FOR THE PERFORMANCE OF THIS CONTRACT in current funds as follows: * * *." (Emphasis ours.)

Section 1-(a) of Article III provides for payment to the contractor of the cost of the work performed thereunder. Section 1-(b) of Article III fixes the fee to be paid the contractor in the definite amount of $25,000.00; then follows the proviso that if any or all of the excepted items are included in the contract by the owner, the contractor shall receive an additional fee of five percent, which in no event is to exceed $10,000.00. The balance of Section 1-(b) of Article III is addressed to the contingency of Bond's failure to approve the contract and the effect of such event upon the contractor's fee. Nothing therein contained suggests that the parties intended to terminate their contractual relationship if Bond did not approve the contract.

The words "anything in this contract to the contrary notwithstanding" and the phrase "then the contractor's fee shall not exceed five percent (5%) of the cost * * * of the work performed hereunder * * *" relate to and are a limitation upon the stipulated fee of $25,000.00 which was to be paid in the event Bond approved the contract. These clauses, together with the other language contained in Section

1-(b) of Article III elaborate the general obligation of the defendant to pay the contractor for "THE PERFORMANCE OF THIS CONTRACT." (Emphasis ours.)

In the absence of qualifying language indicating a contrary intent, the words "work performed by the contractor hereunder" as used in connection with the amount of the contractor's fee in the event of Bond's non-approval, must be considered as having the same significance as the identical words appearing in that part of Article III which relate to the payment of the cost of the construction. In both instances, the words "work performed' are to be considered in the sense of work done in PERFORMANCE OF THE CONTRACT. They cannot fairly be considered as referring merely to work actually done by the contractor on the foundation.

It clearly appears that the parties intended the contractor's fee of $25,000.00 to be subject to Bond's approval. This was a just and reasonable requirement, entirely consistent with the object of the contract. Bond was to bear a substantial, if not the greater part, of the cost of the building which presumably included the contractor's fee. It was, therefore, but fair that Bond, although not a party to the contract, should have the right to approve the payment of the stipulated fee of $25,000.00, or by withholding its approval, to limit the amount of that fee to a sum not to exceed five percent of the cost of the work performed under the contract. We find no language in the contract reasonably susceptible of the construction that Bond's failure to approve the contract was to have any other effect.

The foregoing conclusions are based upon a consideration of the language of the contract without reference to the terms of the lease which are not in evidence. Whether upon a consideration of the pertinent provisions of the lease the effect of Bond's failure to approve the contract may be found to be otherwise than now appears from an examination of the contract alone, cannot here be determined but upon the evidence in the record we are required to hold that the trial court erred in granting defendant's motion for judgment at the close of plaintiff's case.

Finding the contract to be free of ambiguity it is unnecessary to apply the subsidiary rule of construction of written contracts holding that a contract is to be construed most strongly against the party who prepared and drafted it, and for the same reason there is no occasion to rely upon the application of the firmly established rule of procedural law

that upon motion for judgment at the close of plaintiff's case the evidence must be considered in the light most favorable to the plaintiff.

It is suggested that plaintiff failed to prove damages and that in asking for $45,000.00 he is in effect claiming a greater amount for not doing the work than he would have received had he performed the contract including the excepted items. In the latter event his fee would not have exceeded $35,000.00. The fact that plaintiff may have prayed for an excessive amount of damages does not constitute adequate warrant for entering judgment against him.

This is an action for loss of profits arising from the defendant's alleged breach of contract. The rule of damages that governs in such cases is stated in the recent case of **Allen, Heaton & McDonald Inc., v. Castle Farm Amusement Co. 151 Oh St 522 (decided June 15, 1949)** wherein the Supreme Court held:

"* * * Such damages may include the further compensation plaintiff would have received under the contract if it had been performed less the value to plaintiff of his being relieved of the obligation of completing performance. (**James v. Allen County, 44 Oh St 226** approved and followed.)" (Part of syllabus 1.)

And in paragraph 3 of the syllabus of the cited case, the court said:

"3. In such a case plaintiff has the burden of alleging and proving not only (a) what he would have received under the contract from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom).

Unless he proves both of these facts, he cannot recover as damages the profits he would have earned from full performance of the contract."

Plaintiff testified in substance that being relieved of the performance of the contract had no value to him. Also he attempted to establish that a portion of his general office expense properly was chargeable against the performance of the contract but was prevented from introducing such evidence by the trial court. The evidence submitted and proffered by plaintiff in this regard conformed to the rules laid down in Allen, Heaton & McDonald Inc. v. Castle Farm Amusement Co. Inc. supra.

Also it is argued that plaintiff's testimony on the subject of damages is incredible and unworthy of belief. This argument relates to the weight of the evidence which is not involved in this appeal. Whether plaintiff was entitled to nominal damages or an award in a substantial sum is not a matter for determination here.

For the reasons stated, the judgment of the common pleas court is reversed and the cause remanded for further proceedings according to law. Exceptions. Order see journal.

HURD, J, concurs.

SKEEL, PJ, dissents (see dissenting opinion).

SKEEL, PJ (DISSENTING):

The action of the plaintiff is one based upon a contract between the parties under which plaintiff was to act as general contractor in building a "Building for Bond Stores Inc. at Euclid Avenue and East 9th Street, Cleveland, Ohio."

The contract provides in part:

"In general, the work covered by the contract contemplates a completed building, ready for use by Bond Stores Inc., hereinafter called 'Bond' as lessee of the owner under a certain indenture of lease dated as of June 1, 1944, and hereinafter called the 'Lease' but in no event shall the work covered by this contract include the following items: * * *."

Then follow the items excluded from the operation of the contract which included the demolition of the building then on the property, the purchase and execution of the steel work and the installation of the store fixtures. With regard to the following six items the owner reserved the right to procure proposals and could include or withhold such work within or outside of the contract. Such items were:

1. Plumbing
2. Heating and Air Conditioning work
3. Electrical work
4. Elevators (2) and sidewalk lift
5. Pneumatic tube system
6. Sprinkler system.

The building was to be built in accord with plans and specifications prepared by the Architect and approved by

the parties which specifications and plans were made a part of the record.

The contract then provides:

"The Contractor shall commence work on the foundation at once and shall proceed with the same as rapidly as permitted by the progress of the work of demolition of the Hickox Building. The Contractor shall commence the balance of the work covered by this Contract forthwith upon the approval of this contract by Bond and the deposit with the Disbursing Agent in accordance with the provisions of Sec. 3 of Article I of the aforesaid Lease, of the cost of the new building * * *."

Article 3 Section I of the Contract, entitled "The Contract Sum" then provides:

"(a) The cost of the work performed by the Contractor hereunder as such cost is defined and restricted by the provisions hereinafter contained in Section 2 of this Articlle III; and

(b) The Contractor's fee which shall be Twenty-Five Thousand Dollars ($25,000.00) plus an amount equivalent to five percent (5%) of the cost as defined and restricted in Section 2 of this Article III, of such of items (1) to (6) inclusive, as set forth in Section 1 of Article I hereof, as the owner, in accordance with the provisions of said section, causes to be included in the work covered by this Contract: provided, however, in no event shall such additional fee of the Contractor exceed Ten Thousand Dollars ($10,000.00) and provided further, anything in this Contract to the contrary notwithstanding if this Contract is not approved by Bond, then the contractor's fee shall not exceed five percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the Contractor hereunder."

The plaintiff alleges that the defendant refused to permit him to carry out his obligations under the contract, whereby he was damaged in the sum of $45,000.00 which he alleges to be the fair value of his profit, benefits and rights under said contract.

The plaintiff also testified in substance that if he had been permitted to carry out his part of the contract he would have been put to no expense that was not otherwise incurred by him and that the time that would have been consumed would not have interfered with any other work he either

did or could have done and that the damage suffered would therefore be five percent of the total cost of the building. There was no other evidence on the subject of damages.

The record shows that Bond's did not approve the contract and that the building was actually built by another contractor, except for the footages that were constructed by the plaintiff for which he was paid at the contract rate. The evidence also shows that the total cost of the building was $909,641.44 which included $70,707.96 expended for steel construction.

The plaintiff's claims of error are as follows:

1. The finding, judgment, ruling and decree of the trial court is contrary to and against the manifest weight of the evidence.

2. The finding, judgment, ruling and decree of the trial court is not sustained by sufficient evidence.

3. The sustaining of defendant's motion at the conclusion of plaintiff's testimony and dismissing plaintiff's amended petition was against the weight of the evidence and is contrary to law.

It was an essential part of plaintiff's case that he produce the contract upon which his claim was based. The provisions which are determinative of the issues presented to the trial court have been above set forth.

It is true as argued by plaintiff that the contract contemplated a completed building. But it is equally true that the building was to be constructed for a special purpose and for a particular lessee, Bond Stores Inc. Before the plaintiff was granted the right to perform the major part of the work contemplated by the contract, the contract required the approval of "Bonds." The provision as above quoted clearly provided under Article III is:

"* * * and provided further, anything in this contract, to the contrary notwithstanding, if this contract is not approved by Bonds, then the Contractor's fee shall not exceed five percent (5%) of the cost as defined and restricted in Section 2 of this Article of the work performed by the Contractor hereunder."

Until therefore "Bond" had approved the contract the only work which he was called upon to do was with regard to the foundation for which he was to be paid the cost of the materials and labor, plus five percent. The plaintiff's own

evidence, taken in its most favorable light, in supporting the issues contended for, by the plaintiff, shows clearly that under the facts as thus established he was not entitled to recover.

One other question is presented, and that is whether there is any evidence of damage which, if our interpretation of the contract be not correct would entitle plaintiff to recover more than nominal damages.

The plaintiff's evidence is that even if the building had been constructed by him, no duties were imposed upon him that require the expenditure of money or create costs which would be saved if he did not do the work and that his time would not have been engaged sufficiently if the work had been done that would have in any way interfered with his doing any other work of the same kind during the period of construction.

It is inconceivable that these statements could possibly be true. To say that a contractor could build a $900,000.00 building within a period of 100 working days without expense or cost to him, that could not be avoided if he did not do the work, or that his own time for which he was to be paid up to $35,000.00 if he did the work, would not consume time that could otherwise be gainfully employed if he did not do the work, just is not worthy of belief and should be entirely disregarded.

In the case of **Black v. City of Berea, 137 Oh St 611 at pages 626-7,** the supreme court, by Turner, J., quotes with approval from Cyclopedia of Automobile Law and Practice, Vol. 10, page 146 as follows:

"Where facts testified to are opposed to all natural laws and common experience, so that it is inconceivable that any such thing could have occurred, courts will refuse to believe it, on the ground that they will take judicial notice of its incredibility."

The rule that upon a motion for directed verdict or for judgment at the end of the plaintiff's case the evidence was to be construed most favorably toward the plaintiff cannot be extended beyond the realm of reason.

For the foregoing reasons the judgment should be affirmed.