·· KNOX *v.* KNOX.

1. DESCENT AND DISTRIBUTION — CONTRACTS — PERFORMANCE — EVIDENCE.

Conclusion that defendant father had refused to cooperate with regard to any inventory or accounting and further refused to perform under his agreement, with plaintiff son, respecting settlement of mother's, estate to reimburse son for expenditures made on behalf of deceased mother from whom defendant was estranged *held,* justified under record presented.

2. TRIAL—QUESTIONS FOR TRIER OF FACT—CONTRACTS—PARENT AND CHILD.

, Trial judge's finding that there were no issues of fact to be determined by jury *held,* correct, in action by son against father for sum claimed to be due under contract whereby the father had agreed to pay the son $5,000 which son had expended on behalf of his mother who had been separated from the father for several years before her death.

3. EXECUTION OF INSTRUMENTS—CONTRACTS—ATTORNEY.

Contract between father and son was binding on former who had signed it himself, notwithstanding it was executed on behalf of the son by the son's attorney, where the son had authorized the attorney to do so, since such method of execution is permissible.

4. CONTRACTS—PARTIES.

Fact that defendant's daughter, sister of plaintiff, had not executed contract executed by plaintiff wherein latter agreed to give a quitclaim deed, executed by himself and the sister, to farm, the title to which had been held by defendant and his estranged wife as tenants by the entireties, did not make the contract less binding on defendant, since the daughter had assumed no obligations under the contract and was to receive no benefits.

5. SAME—PERFORMANCE.

Performance by plaintiff son of all of his agreements under contract with defendant father for reimbursement for sums plaintiff had given his mother after estrangement from defendant

---

REFERENCES FOR POINTS IN HEADNOTES

[3] 2 Am Jur, Agency §§ 107, 239 *et seq.;* 5 Am Jur, Attorneys at Law § 67.
[5, 9] 12 Am Jur, Contracts §§ 333–335.
[6, 9–14, 17, 18] 12 Am Jur, Contracts §§ 295–298.
[7] 26 Am Jur, Husband and Wife § 82.

*held,* not a prerequisite to performance by defendant, where it appears that plaintiff was ready and willing to carry out his agreement, lack of performance by plaintiff is not shown to have rendered it impossible for defendant to perform and contract did not require performance by plaintiff before defendant rendered performance.

6. SAME—PERFORMANCE.

A court may not read into a contract that performance by one party is a condition precedent to performance by the other party, where the contract does not so specify nor necessarily imply it, and situation is not such as to indicate a mutual intent that performances by the parties were so related.

7. HUSBAND AND WIFE—DEATH OF SPOUSE—SURVIVOR'S TITLE.

Title to property held by husband and wife as tenants by the entireties became the sole and absolute property of the survivor upon the death of one spouse.

8. SAME—CONTROL OF PERSONALTY.

Presumably items of personal property on farm, the title of which was held by husband and wife as tenants by the entireties, were subject to husband's control after the death of the wife who had resided on the farm for several years previous to her death and during estrangement from defendant husband who resided elsewhere.

9. CONTRACTS—PERFORMANCE—CONDITIONS PRECEDENT.

Plaintiff son's obligations to deliver certain specified certificates of corporate stock and insurance papers which were fulfilled and his obligations to deliver title deed to farm and make a quitclaim deed to defendant father to be signed by plaintiff and his sister or to execute and deliver bills of sale of personalty and an inventory of articles on the farm but performance of such obligations by the son were not specifically or by necessary implication made conditions precedent to performance by father of his obligation to pay $5,000 or more to son for sums expended on behalf of the lately deceased mother who was estranged from the father *held,* to preclude father from insisting upon son's performance before being subject to liability for payment of his obligation.

10. SAME—CONDITIONS PRECEDENT—INJUSTICE.

While the courts may not turn a condition precedent into an independent agreement, they are disinclined to construe stipulations in a contract as conditions precedent, unless compelled to do so by language of the contract plainly expressed, where so to do would result in injustice.

11. SAME—PERFORMANCE—CONDITIONS PRECEDENT.
    A condition precedent is a fact or event which the parties intend to exist or take place before there is a right to performance.

12. SAME—DISTINCTION BETWEEN CONDITION AND PROMISE.
    A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor.

13. SAME—FULFILLMENT OF A CONDITION.
    The right to enforce a contract does not come into existence if a condition precedent thereto is not fulfilled.

14. SAME—CONDITION—CONSTRUCTION OF CONTRACT.
    Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract.

15. SAME—OTHER REMEDIES—HUSBAND AND WIFE—PARENT AND CHILD.
    Fact that plaintiff son might have recovered sums advanced by him for mother's support, medical treatment and funeral expenses from her estate as provided in her will would not operate as a defense to father in action on contract whereby he agreed to reimburse son for such expenditures.

16. SAME—CONDITIONS PRECEDENT—MOTHER'S SUPPORT, MEDICAL AND FUNERAL EXPENSES.
    Submission in probate court by plaintiff as claims against his mother's estate for sums he had expended on her behalf for support, medical treatment and funeral expenses *held,* not to have been established as a condition precedent to recovery under his contract with his father for payment of such sums.

17. SAME—CONSTRUCTION—PRESUMPTIONS—CONDITIONS.
    A contract will not be presumed to have imposed an absurd or impossible condition on one of the parties, but will be interpreted as the parties must be supposed to have understood the conditions at the time.

18. SAME—CONSTRUCTION—CONDITION.
    Words literally appropriate for condition have not been given their natural meaning, where the consequence would lead to injustice and a violation of the probable intent of the parties.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted April 7, 1953. (Docket No. 16, Calendar No. 45,655.) Decided June 8, 1953.

Assumpsit by James Ehninger Knox against James Chowell Knox for money due under written agreement. Directed verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Judson B. Robb,* for plaintiff.

*Herman J. Lipp* (*Foss O. Eldred,* of counsel), for defendant.

Carr, J. Plaintiff in this case is the son of defendant and of defendant's former wife, Florence E. Knox, who deceased on October 25, 1946. In 1940, or 1941, because of difficulties not material in this case, Mr. and Mrs. Knox separated and did not live together thereafter. It does not appear that divorce proceedings were instituted by either. They owned a farm in Berrien county, comprising approximately 90 acres, as tenants by the entireties. Mrs. Knox remained on the farm, receiving no direct support from defendant. At the time of her death in 1946 she was the owner of an estate, consisting largely of property that she had inherited, slightly in excess of $25,000. In accordance with her will the property was assigned to plaintiff and to his sister.

For some years prior to her death, plaintiff assisted his mother financially, paying bills incurred by her for medical attendance. He also paid her funeral expenses. For such expenditures he did not obtain, or seek, reimbursement from the estate. No bills of the character referred to were paid by defendant.

Following the death of Mrs. Knox, plaintiff endeavored to persuade defendant to reimburse him

for the expenditures that he had made for the funeral expenses of his mother and for her benefit during the last years of her life. A memorandum was prepared, dated November 13, 1946, and signed by defendant, listing bills that plaintiff claimed to have paid, and reciting that defendant would pay such bills if the parties reached a settlement. Subsequently, under date of January 29, 1947, a formal agreement was drawn by an attorney representing defendant, which referred to the claims of plaintiff and stated in substance that defendant would pay the expenses as listed up to the sum of $5,000, together with any amount over said sum that James E. Knox might be able to establish by legal proof had been paid by him for and in behalf of his mother. The writing further indicated that from the obligation assumed there should be deducted any moneys owing by plaintiff to defendant. It provided also that plaintiff would deliver to defendant certain items of personal property. Specific reference was made to building and loan stock, creamery stock and life insurance papers, other stocks, bonds and papers, belonging to defendant being covered by general reference.

Plaintiff agreed to deliver to defendant's attorney the warranty deed to the farm in Berrien county, presumably the instrument of conveyance by which title to the property was vested in Mr. and Mrs. Knox, to make a quitclaim deed, to be signed by himself and his sister, of all right, title and interest, in and to said farm, to deliver to defendant an inventory of personal property on the farm, and to pay for any such property belonging to defendant that he could not deliver. The agreement stipulated that any crops raised during "the past current year," or money derived from the sale thereof, or from the sale of stock, should belong to defendant. Delivery of a bill of sale of certain specific items of

personal property was also required. The instrument as prepared by the attorney was signed by defendant, and plaintiff's attorney, having been duly authorized thereto, signed plaintiff's name.

It appears from the record that the certificates of stock and the insurance papers referred to in the agreement were received by defendant through his attorney. Plaintiff and his sister signed a quitclaim deed of any interest owned by them in the farm, but the record does not show that such deed was turned over to defendant. The latter denied receiving the warranty deed referred to, and claimed that it was his understanding that it could not be found. Plaintiff sought to reach an accounting with defendant with reference to the proceeds of any crops or personal property to which the latter was entitled. The conclusion is fully justified that defendant refused to cooperate with regard to any inventory or accounting and further refused to perform under the agreement into which the parties had entered.

Under date of December 29, 1949, plaintiff brought an action in circuit court against defendant, basing his alleged right to recover on the written undertaking that the parties had made. In his answer to the declaration, defendant alleged in substance that the writing on which plaintiff relied was not a binding agreement because plaintiff had not signed it, and, further, that plaintiff had not performed his obligations thereunder. On the trial of the case before a jury plaintiff and defendant testified, and at the close of the proofs each moved for a directed verdict. It appears, however, that counsel on both sides presented to the court written requests to charge. As to the effect thereof, see *Arnold* v. *Krug,* 279 Mich 702, 706, and prior decisions there cited.

The trial judge came to the conclusion that there were no issues of fact to be submitted to the jury,

that the contract was valid, that there had been partial performance by plaintiff, that plaintiff was ready, willing and able, to perform his remaining obligations as set forth in the contract, and that he was entitled to recover the amount claimed in the declaration, namely, the sum of $5,000. Verdict was therefore directed in that amount, and judgment entered accordingly. Defendant has appealed, claiming that the action of the trial judge was erroneous, that a verdict for defendant should have been directed, or that, in the alternative, the case should have been submitted to the jury.

Examination of the testimony of the parties on the trial discloses that they were in substantial agreement as to what had actually been done. Defendant conceded that plaintiff had in part performed his promises as recited in the agreement. He testified that he had refused to pay the $5,000 because plaintiff had not fully performed. He also said that he did not think the agreement was binding because his daughter did not sign it. From the averments of the answer it may be inferred that defendant declined performance on his own part because he considered the contract of no force and effect due to the failure of plaintiff to sign it in person. There was no dispute between the parties as to what plaintiff had done, nor as to defendant's refusal to make the payment that he had agreed to make. Plaintiff's proofs, including exhibits offered and received in evidence, established that he had paid his mother's bills and her funeral expenses in an aggregate amount exceeding $5,000. Such fact was not denied by defendant in his answer or in his testimony. The trial judge was correct in concluding that there were no issues of fact to be determined by the jury.

It is undisputed that plaintiff authorized his attorney to affix his signature to the written contract executed on January 29, 1947, which is the basis of

this action. Such method of execution was permissible. The signature of plaintiff's sister was not required. She assumed no obligations, and was to receive no benefits. The undertaking with reference to the quitclaim deed was solely that of the plaintiff. Defendant's apparent belief that the contract between the parties was not binding on him because not properly executed was incorrect.

It is defendant's position on this appeal, as it was on the trial in circuit court, that if a valid contract had been made by the parties no performance whatever was required on defendant's part until plaintiff had fully performed his obligations. Obviously the trial judge did not accept such theory. It may be noted in this connection that the proofs fully justify the conclusion that plaintiff was ready and willing to carry out his agreement. There is no claim in the case, presented either by pleadings or by proofs, that the nonperformance by plaintiff of all of his obligations rendered it impossible for defendant to perform.

It is significant that the contract executed by the parties did not in specific terms provide that there should be no obligation on defendant's part unless and until plaintiff had carried out each and all of his promises. That defendant might have insisted on the inclusion of such a provision by his attorney in drafting the instrument is obvious. *Kachanowski* v. *Cohen*, 305 Mich 438. This was not done, and we may not read into the contract any such mutual intent. There is nothing in the situation to justify a conclusion that the delivery of the title deed of the farm, the making of the quitclaim deed to be signed by plaintiff and his sister, or the execution and delivery of bills of sale, to which reference was made, were conditions on which defendant's liability rested. A like conclusion must be reached on this record as to the inventory of articles on the farm.

On the death of Mrs. Knox such farm became the sole and absolute property of the defendant by right of survivorship. Presumably items of personal property on the farm were subject to his control. Under the circumstances it was but natural that plaintiff should seek defendant's cooperation with reference to the making of the inventory, and likewise with reference to the crops raised during the last current year before the making of the contract, or the proceeds thereof, if there were such. However, there is nothing in this record on which to base a conclusion that there were any items of property that plaintiff was unable to deliver to defendant, and for the value of which he was liable. Neither is there any showing, or any claim, as to crops raised, or stock sold, during the year 1946. It does not appear that plaintiff personally received money from the sale of such crops or stock. The contract contained no specific promise by plaintiff to pay defendant therefor, merely reciting the stipulation that any crops and stock, or proceeds thereof, of the character referred to, belonged to defendant. Defendant did not by answer raise the specific claim that his obligation to plaintiff was subject to an offset. On the record in the case defendant is not in position to assert that either an inventory or an accounting was a condition precedent to performance on his part. As before noted, plaintiff did perform his undertaking to deliver certain specified certificates of corporate stock, and insurance papers.

While parties to a contract may by specific provision, or by necessary implication, make performance by one party a condition precedent to liability on the part of the other, courts are not disposed, in the absence of specific provisions or reasonable implications, to give such construction to an agreement, especially if so doing brings about an unfair

result. Recognizing this proposition, it is said in
17 CJS, p 794:

"While the courts may not turn a condition pre-
cedent into an independent agreement, they are dis-
inclined to construe stipulations in a contract as
conditions precedent, unless compelled to do so by
language of the contract plainly expressed, where so
to do would result in injustice."

The distinction between a condition precedent and
a promise to discharge an obligation was considered
in *Lach* v. *Cahill,* 138 Conn 418 (85 A2d 481). It
was there said:

"A condition precedent is a fact or event which
the parties intend must exist or take place before
there is a right to performance. *McIsaac* v. *Hale,*
104 Conn 374, 379 (132 A 916); *McFarland* v. *Sikes,*
54 Conn 250, 251 (7 A 408, 1 Am St Rep 111); 3
Corbin, Contracts, § 628 at p 515, § 629; 5 Page, Con-
tracts (2d ed), § 2586; 1 Restatement, Contracts, §
250. A condition is distinguished from a promise in
that it creates no right or duty in and of itself but is
merely a limiting or modifying factor. 3 Corbin,
Contracts, § 633. If the condition is not fulfilled,
the right to enforce the contract does not come into
existence. *Bialeck* v. *Hartford,* 135 Conn 551, 556
(66 A2d 610); *Sheketoff* v. *Prevedine,* 133 Conn 389,
393 (51 A2d 922, 171 ALR 1009); *Fischer* v. *Ken-
nedy,* 106 Conn 484, 490 (138 A 503); *Webb* v. *Moel-
ler,* 87 Conn 138, 141 (87 A 277); 3 Williston, Con-
tracts (Rev ed), § 675; 1 Restatement, Contracts,
§ 257. Whether a provision in a contract is a con-
dition the nonfulfillment of which excuses perform-
ance depends upon the intent of the parties, to be as-
certained from a fair and reasonable construction of
the language used in the light of all the surrounding
circumstances when they executed the contract.
*New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn
169, 180 (128 A 320); *Sugrue* v. *Champion,* 128 Conn

574, 577 (24 A2d 890); 3 Corbin, Contracts, p 544; 5 Page, Contracts (2d ed), § 2579."

In *Front Street, M. & O. R. Co.* v. *Butler,* 50 Cal 574, in holding that monthly payments under a construction contract were not conditioned on performance by the payee, it was said:

"Courts are disinclined, as was observed by the court of appeals of New York (20 NY 432*), to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equities of the case."

See, also, *Inland Construction Company* v. *City of Pendleton,* 116 Or 668 (242 P 842); *Benes* v. *Hickox Bldg. Co.* (Court of Appeals of Ohio), 89 NE2d 315.

The will of Mrs. Knox made provision for the payment of all "just debts and funeral expenses." This record discloses no reason, either of fact or of law, why plaintiff might not have filed a claim against the estate of his mother, and have obtained allowance thereof, for the sums advanced by him for her support and medical treatment, as well as for the funeral expenses. The availability of such remedy did not, however, preclude him from relying on his contract with the defendant. The fact that he might have recovered from the estate had he sought to do so is not a defense in the present action.

It should be noted that the agreement between plaintiff and defendant contained expressions indicating that the parties had in contemplation that plaintiff would make a showing before the probate court, in the proceeding relating to his mother's estate, as to the amounts that he had expended

---

* *Tipton* v. *Feitner,* 20 NY 423, 432.—REPORTER.

and the bills that had been paid by him in full. As before mentioned, the agreement was drawn by defendant's attorney. Obviously a determination of the matter by said court could not have been obtained other than by plaintiff's filing a claim for reimbursement and submitting it to the court. Such action would have left him in an anomalous situation insofar as his right to recover from defendant was concerned. Under the circumstances it seems scarcely possible that there was any actual intent on the part of either party that plaintiff should pursue his remedy against the estate. It may be assumed that defendant and his counsel desired that plaintiff should establish the total amount that he had expended for his mother by a sufficient showing as to the facts. However, it does not appear that at any time defendant has questioned such expenditures or any of them. Submission of the matter to the probate court may not be regarded as a condition precedent to plaintiff's right to maintain the present action.

In 12 Am Jur, p 848, it is said:

"A contract will not be presumed to have imposed an absurd or impossible condition on one of the parties, but will be interpreted as the parties must be supposed to have understood the conditions at the time."

Of like import is 3 Williston on Contracts (Rev ed), § 665, where it is said:

"Especially words literally appropriate for condition have not been given their natural meaning where the consequence would lead to injustice and a violation of the probable intent of the parties."

In the early case of *Clay* v. *Ballard,* 9 Rob (La) 308, the plaintiff sought to recover the sum of $4,000 which defendant had agreed to pay him as an attorney fee in a certain case pending before the supreme

court of the United States. Payment of such fee was resisted on the ground that the promise was conditioned on the decision in such case settling fully the question as to the validity of all contracts for the sale of slaves in the State of Mississippi during a certain period of time. It was claimed that such questions were not fully determined and that certain issues were left to the decision of the State courts. In reaching the conclusion that the defense was not tenable, it was said:

"It cannot be imagined that the defendant intended to impose either an absurd, or an impossible condition; and to make the payment of the additional fee depend upon the fact, that the judgment to be pronounced by the court in the case of *Groves* v. *Slaughter,** to which the defendant Ballard was not a party, should, in all courts, and between all parties, whenever a similar question should arise, carry with it the absolute authority of the thing adjudged. No man in his senses would enter into any such engagement."

In view of the foregoing conclusions, it is unnecessary to consider incidental matters discussed by counsel in their briefs. The judgment of the trial court is affirmed. Plaintiff may have costs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred with CARR, J.

SHARPE, J., concurred in the result.

---

* 15 Pet (40 US) 449 (10 L ed 800).—REPORTER.