**In re FENTON AMC JEEP, INC., Debtor.**

**Michael A. MASON, Trustee, Plaintiff,**

v.

**AMC SALES CORPORATION, et al., Defendant.**

**Bankruptcy No. 79–60114.
Adv. No. C–23.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Dec. 1, 1983.

Dennis M. Haley, Flint, Mich., for plaintiff/trustee.

Craig A. Anderson, Detroit, Mich., for defendant/American Motors Sales Corp.

Kittredge Klapp, Flint, Mich., for defendant/Genesee Merchants Bank & Trust Co.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STANLEY B. BERNSTEIN, Bankruptcy Judge.

*Introduction*

The debtor, Fenton AMC Jeep, Inc., operated an AMC dealership as a franchisee under a Dealer Franchise Agreement with the defendant, AMC Sales Corporation. On March 5, 1979, the debtor filed a Ch. XI petition with this Court; the assets of the debtor are presently being liquidated by the plaintiff, the trustee appointed by this Court on December 6, 1982. The dealer franchise agreement was terminated by order of this Court, effective January 1, 1983.

On May 18, 1983, the trustee filed a complaint against the defendant AMC Sales Corporation (AMSC) to recover damages for breach of the Franchise Agreement. After extensive formal and informal discovery and the submission of various reports, records, and other accountings, the parties have resolved many of the issues raised by the complaint and the defendant's answer and affirmative defenses.

Remaining at issue is the defendant's liability for damages arising from an alleged breach of paragraph 19 of the franchise agreement, "warranty and warranty adjustments," especially relating to warranty work performed by the debtor for which late or incomplete claims were submitted to the defendant. Similarly, the trustee alleges damages arising from the defendant's failure and/or refusal to pay late or incom-

plete claims relating to special promotional programs established by the defendant from time to time during which qualifying vehicles were sold by the debtor. The trustee also alleges damages arising from the defendant's failure and/or refusal to repurchase certain video display equipment sold by the defendant to the debtor.

The defendant filed a motion for partial summary judgment with respect to the damage claims relating to warranties and special programs. The trustee filed partial summary judgment regarding the repurchase of the video equipment. The motions were exhaustively briefed by both parties. Having fully considered the pleading and briefs and having conducted its own independent research, the Court has decided for the following reasons to deny the defendant's partial summary judgment motion on the warranty work and special programs, and to deny the trustee's partial summary judgment on the repurchase of the video equipment.

*Analysis*

  A. Warranty Work and Special Program Monies

With respect to the issue of warranty work, the defendant maintains that the dealer breached its contractual obligations, and that under a proper construction of the Franchise Agreement, AMSC has no obligation to pay for warranty work performed by the Debtor unless the terms of the Agreement are fully met. Somewhat similarly, the defendant contends that compliance by the debtor with the requirements of the special program are conditions precedent to the formation of a contract, and so again AMSC has no obligation to pay the dealer if the dealer has failed to comply with the requirements of the program. The defendant, therefore, argues that there is no genuine issue of material fact and summary judgment is appropriate.

The trustee's response to both issues is substantially the same: that the total forfeiture of compensation for a breach in the nature of late and incomplete submission of claims is tantamount to a penalty clause and thus void as against public policy. The

trustee, thus, maintains that the defendant is limited to recovering reasonable and actual damages, or in the alternative, that the trustee may recover in quantum meruit for the value of the debtor's performance.

Both parties have supplied this Court with numerous briefs, and a plethora of documents. Hundreds of pages in the aggreggate of reported decisions have been cited in support of their respective arguments. After the arduous task of working its way through this mountain of material, the Court concluded that both parties lost the forest for the trees.

Both parties are partially correct. The defendant's position that the debtor breached the Franchise Agreement by not submitting complete and timely claims is correct. Similarly, the trustee is correct in asserting that the debtor did not automatically forfeit all right to compensation as a result of that breach. It is, however, the trustee's reliance on the theory of the formation of contracts that is wrong-headed and misleading.

There is no reasonable basis for denying the formation of a contract. The contract between the party consists of the Dealer Franchise Agreement and the Dealer Franchise Provisions which are incorporated by reference. Several of the Provisions are critical to the pending disputes and must be read closely.

Paragraph 9 states the basic terms for all payments from A.M.S.C. to dealers:

  9. Allowances

    Dealer shall be entitled to receive from American the allowances as may be specified from time to time in bulletins or other notices of American. Such allowances will be paid, refunded or credited to Dealer as specified in the applicable bulletin or notice.

(emphasis added). Paragraph 19 describes warranty work, obligations:

  19. Warranty and Warranty Adjustments

    (a) Dealer shall deliver to each owner who purchases a new Motor Vehicle from Dealer at retail the applicable Manufac-

turer's Warranty. Dealer shall perform all of the requirements of such Warranty, and Dealer shall make no warranties concerning such Motor Vehicle other than those contained in such Warranty. Such Warranty shall be in lieu of all other warranties; express, implied or implied in law, of the Manufacturer or American, including, but not limited to, implied warranties of merchantability or fitness for a particular purpose.

(b) Dealer shall repair or replace any Parts or Accessories which the Manufacturer is required to repair or replace under the applicable Manufacturer's Warranty without charge to the owner thereof. If the repaired or replaced Parts or Accessories are found to be defective by the Manufacturer, American shall pay or credit to Dealer the allowances for labor and for such replacement Parts or Accessories which are specified in bulletins in effect on the date of such repair or replacement.

The final section of the "Provisions" which must be considered is:

20. Right to Require Compliance and Performance and Good Faith Acts.

Dealer acknowledges the right of American to insist upon full compliance with and full performance of each and all of the duties, obligations and responsibilities of Dealer under this Agreement, and failure by Dealer to fulfill or perform any of the same shall constitute a material breach of this Agreement. Dealer agrees that American's insistence upon such compliance or performance, or American's termination of this Agreement, or American's refusal to enter into a new Agreement, when there is a reasonable basis for believing that Dealer has failed to comply with or perform any of the same, shall not be deemed to be, or claimed by Dealer to constitute, a lack of good faith or threats or acts of coercion or intimidation by American.

These contract provisions expressly govern the dispute regarding the warranty work and impliedly apply to the special program dispute; it is clear that this contract is intended to govern the entire relationship between the manufacturer and its dealers. The defendant's argument that one has to look beyond the four corners of the contract (*i.e.*, to the Warranty Manual) to determine the terms of warranty work, and that the special programs are mere "offers" not covered by the basic agreement is nonsensical. The Agreement and the Provisions provide the contractual basis of the relationship between the parties that basis may be supplemented by additional documents which are consistently referred to in the contract. The program sheets which state the terms of the special programs were not, therefore, an "offer" to make a contract.

Similarly, the defendant's position that the program sheets constitute a condition precedent to any payment to dealers is indefensible. Conditions precedent of this type are disfavored under Michigan law. The leading case on this issue is *Knox v. Knox,* 337 Mich. 109, 59 N.W.2d 108 (1953), cited by both parties. In *Knox,* the court stated that "[i]t is significant that the contract executed by the parties did not in specific terms provide that there should be no obligation on defendant's part unless and until plaintiff carried out each and all of his promises. *Id.* at 116, 59 N.W.2d 108. The program sheets in question do not state that timely submissions of documentation are conditions precedent to any obligation on the part of the defendant, but rather couch the time limitation in terms stating that late submissions "are invalid and will not be processed" or simply set dates by which forms must be received by the defendant. With respect to such non-express conditions precedent, the *Knox* court held:

While parties to a contract may by specific provision, or by necessary implication, make performance by one party a condition precedent to liability on the part of the other, courts are not disposed in the absence of specific provisions or reasonable implications, to give such construction to an agreement, especially if so doing brings about an unfair result.

*Id.* at 117–18, 59 N.W.2d 108. The court then quoted a numerous sources to clarify this standard further:

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence. Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract."

*Id.* at 118, 59 N.W.2d 108, quoting *Lach v. Cahill,* 138 Conn. 418, 85 A.2d 481 (1951) (citations omitted).

■ The reference in *Knox* to the avoidance of unjust results is most appropriate to the proper analysis of the disputes here. It is an elementary principle of contract law that one party to an agreement should not be unjustly enriched at the expense of another, and the remedy of restitution is available to avoid such unjust enrichment.

■ The remedy of restitution is available to breaching parties where the innocent party has benefitted from the defaulting party's incomplete or defective performance. The basic premise of restitution as a remedy available to a defaulting plaintiff is described in the leading treatise on the subject:

When restitution is granted to a party who has breached his contract, we see more sharply than in any other part of the law of restitution that this is based squarely on the prevention of unjust enrichment. The enrichment must of course be present, but as we have seen, this alone is not a sufficient reason for relief. Retention of the enrichment without compensation must appear to be unjust and here the "ground" can only be described in very broad terms indeed: the

benefit was conferred at the defendant's request not as a gift but rather in the shared expectation that it was to be paid for through furnishing some form of consideration. This serves to mark off the cases from those in which the benefit was unsolicited.

G. Palmer, I The Law of Restitution § 5.1 at 573 (1978). Professor Palmer explains that this analysis applies only where the plaintiff's breach was of a nature such that any future performance by the defendant is excused—thus prohibiting the plaintiff from seeking enforcement of the contract or the recovery of damages. The defendant here has consistently maintained that its performance was excused or never arose; the difference does not appear to be significant since the result, of denying the trustee any remedy, remains the same. In addition to requiring the existence of a "essential" breach as a precondition to an action in restitution, Professor Palmer also describes an alternative situation for which restitution is proper: where the defaulting plaintiff has substantially performed. *Id.* at § 5.2 at 575. The plaintiff in this proceeding has stated a proper claim under either of these criteria sufficient to defeat the defendant's motion for summary judgment.

■ Professor Palmer's analysis is consistent with the Restatement (Second) of Contracts § 374 (1981):

§ 374. Restitution in Favor of Party in Breach.

(1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

(2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to

restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.

It is clear, therefore, that the Trustee's contention that the defendant has an obligation to the debtor's estate is correct. As such, the defendant's motion for summary judgment with respect to the warranty work and special program monies is denied.

The major issue to be tried in this dispute will be the amount of money owed the debtor. As section 374 of the Restatement (Second) indicates, the debtor is entitled to recover for any benefit conferred upon the defendant, less any damages caused by the debtor's breach. Professor Palmer elaborates:

> When restitution is granted to a party in default it will always be limited in amount as to fully compensate the defendant for the damages caused by the plaintiff's breach insofar as such damages are measurable. Recovery will be limited to the lesser of the following two amounts: (1) the value of the benefit to the defendant less the damages resulting from the breach; or (2) the contract price less the damages resulting from the breach.

Palmer, § 5.3 at 579. Despite the recent trend requiring the plaintiff to prove the damages suffered by the defendant as the result of the breach, Michigan still follows the traditional rule of placing the burden of proof of those damages on the defendant. *Id.* at § 5.4 at 588–89, *citing Watson v. Harrison,* 324 Mich. 16, 36 N.W.2d 295 (1949). This Court will, of course, apply Michigan law.

B. *Video Equipment*

██ The Trustee also seeks to have the defendant repurchase video equipment it sold to the debtor in July, 1982; the purchase price of that equipment was $4,189.43. The parties agree that the contract does not expressly provide for the repurchase of such equipment, but the Trustee contends that it was the intention of the parties is that such subsequent purchases by the dealer would be subject to the repurchase provision of the contract. The Trustee also points out that Michigan's franchise statutes forbid the registration of a franchise where the franchisor is not required to compensate the franchise through repurchasing of equipment at the termination of the franchise under certain conditions. M.C.L.A. § 445.-1527(f).

The Trustee claims the fair market value of this equipment is $3,296.58; the defendant suggests that the value is only $350.00. Inherent in the Trustee's argument throughout is his position that the video equipment provided dealers by the defendant was sold at grossly inflated prices, and further, that although the purchase was "optional," economic realities made the purchase mandatory.

The defendant maintains that the plain language of the contract reveals that this equipment does not fall under the repurchase provision. It is A.M.S.C.'s position that the debtor merely purchased optional equipment for which the defendant has no contractual or legal obligation to repurchase.

These are significant mixed issues of law and fact to be determined in this connection. Foremost is the question of whether the defendant has any contractual obligation to repurchase this equipment. Second, the Court will have to determine the proper value of that equipment if any such obligation is established. Therefore, plaintiff-Trustee's motion for partial summary judgment is denied.

SO ORDERED.