**Howard W. BARSS and H.W. Barss Co., Inc., Plaintiffs, Appellants,**

v.

**Carl TOSCHES, et al., Defendants, Appellees.**

No. 85–1359.

United States Court of Appeals, First Circuit.

Argued Nov. 15, 1985.

Decided March 5, 1986.

John D. O'Reilly, III, Framingham, Mass., for plaintiffs, appellants.

Robert M. Schwartz, with whom Feinberg & Feld, P.C., Boston, Mass., was on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This action, arising from a labor dispute, is before us on an appeal from a summary judgment by the United States District

Court for the District of Massachusetts.[1] The court found that picketing of the corporate office of the H.W. Barss Co., Inc. to protest the employment of non-union subcontractor and payment of substandard wages did not constitute a secondary boycott. It additionally found that the statements on the pickets did not libel plaintiff/appellant Howard W. Barss, the company's president.

The facts which gave rise to the charges of defamation and damages due to the violation of Section 8(b)(4)(B) and (D) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(B) and (D), are as follows:

Howard W. Barss Co., Inc., is a construction firm doing business in the Framingham, Massachusetts area. The company operates as an open shop, hiring non-union laborers at wages and benefits considerably lower than those called for in collective bargaining agreements in the greater Framingham area.

In January 1983, the Barss company was contracted as the general contractor for a construction project worth approximately $2.6 million dollars. Defendant/appellee Carpenters Union Local 475, which has union jurisdiction in the Framingham area, heard about the project and sent representatives to request that Barss use only union subcontractors on the job. The company disregarded the union's request. It engaged a number of non-union subcontractors and assigned its own non-union employees to the project as well. In April 1983, after construction began and the union learned that its demand had not been met, it began picketing various subcontractors at the construction site. In May, after learning Barss' own employees were working on the project at substandard wages, the union began picketing Barss' corporate headquarters which is located on a major thoroughfare in Southboro, several miles from the construction project. The picket line was established with signs stating: "HOWARD BARSS IS an officer of H.W.

Barss Co., Inc. H.W. Barss Co., Inc. is A SCAB contractor. Carpenters Local Union # 475." As a result of the union's arrangement of words on the posters, using all capital letters for some words and small print for others, the obviously dominant message was: HOWARD BARSS IS A SCAB.

■ Barss contends that the emphasized portions of the picket signs were defamatory in that they held him up to "contempt, hatred, scorn and ridicule." He further argues that the statement was false and resulted in damage to his personal and business reputation. In a detailed analysis of the statement, the district court found that as an accurate statement of fact regarding the plaintiff general contractor in the context of a labor dispute, the statement did not constitute the essential falsehood needed to establish liability under *Linn v. Plant Guard Workers, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). To recover under *Linn,* the plaintiff involved in a labor dispute must prove that the defamatory statements were published with knowledge of their falsity or with reckless disregard for whether they were true or false. *Linn, supra.* The district court, citing *Letter Carriers v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), went on to say that it would engage in an independent examination of the whole record to determine whether the speech at issue was a false statement of fact before it could be challenged as a reckless and knowing falsehood. Finding that Barss and his company were indeed a non-union contractor that hired workers at substandard rates of pay, the court concluded that the statement, albeit unpleasant, was literally correct. We agree.

■ A common definition of "scab" is a person who works for lower wages than or under conditions contrary to those prescribed by a trade union. *Black's Law Dictionary* 1206 (5th Ed.1979) *see also*

1. This case was removed from the Middlesex County Superior Court when the complaint was amended to include a violation of federal law.

*Webster's Third New International Dictionary* 2022 (1981). In his deposition Barss admitted that his company had employees who were paid well below the union rate and who did not receive health insurance or pension benefits. He admitted that picket signs basically complained that Barss was not paying the union standard wage rates in the area. While he felt that a scab was a lowlife scoundrel, he did admit familiarity with the term in its classic labor dispute applications.

In the second count of his complaint, Barss claims that the picketing occurring at his corporate office was not permissible "area standards" informational picketing directed at a primary employer, as the union contends, but rather, an illegal secondary boycott. Barss argues the true objective was to force his company to cease doing business with the non-union subcontractors.

The critical distinction between acceptable primary activity and the illegal secondary activity depends heavily on the object of the union's picketing. *See Abreen Corp. v. Laborers Int'l Union,* 709 F.2d 748, 754 (1st Cir.1983). The district court, in finding for the union on this charge, relied on the fact that the company was itself the non-union employer paying substandard wages with which the union had its dispute, and that the picketing in question occurred at the corporate office. *Compare Abreen Corp., supra,* and *Pickens-Bond Constr. Co. v. United Bhd. of Carpenters and Joiners,* 586 F.2d 1234 (8th Cir.1978) (picketing conducted at job sites where secondary employers as well as primary employers were working).

Our review of the record leads us to the same conclusion as the district court.

While it may be said that where motive and intent play a leading role, summary judgment should not be granted, *Poller v. Columbia Broadcasting Company,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962), we have nothing more before us than the mere allegation of an illegal motive found in the complaint, and reiterated in an affidavit. In his brief he alleges that he was asked to "cease doing business with non-union subcontractors." His affidavits filed in support of his opposition to summary judgment, however, are primarily directed to the libel charge. In reference to the picketing in issue, he states in the affidavit filed in the Middlesex County Superior Court only that he was aware that it is common practice for the unions to picket construction projects where contractors are not meeting union pay and conditions and that sometimes such pickets are also established at the homes and offices of individual corporate officers referring to them as "SCABS." He claimed that this greatly embarrassed him because he is a community leader involved in many charitable activities and such attacks on his integrity have injured his reputation. In his second affidavit he states that the pickets caused numerous and frequent delays in the delivery of office and construction materials and supplies on a nearly daily basis. While Barss does mention a finding of merit by the National Labor Relations Board to a charge of a violation of Section 8(b)(4)(B) and (D), this is related only to the earlier picketing of the common situs job site, picketing which is not the subject of the action at bar.[2]

We understand that motive and intent are states of mind which do not lend themselves to proof by direct evidence. We have stated, however, that a

2. By removing the picket from the common work site, and beginning another only upon learning that Barss' own employees were being assigned to work, the union took action to modify their activity so as to bring it clearly within the sphere of allowable "area standards" informational picketing. Their prior objective, if it was improper, should not preclude the union from engaging in lawful activity at a later time. We must reject a presumption of the continuity of a state of affairs in construing the legality of picketing where there is no independent evidence to support such a presumption. *See, e.g., McLeod v. Chefs, Cooks, Etc., Local 89, Hotel & Restaurant Employees and Bartenders International Union AFL–CIO,* 280 F.2d 760, 764 (2d Cir.1960); *N.L.R.B. v. Local 50, Bakery and Confectionery Workers,* 245 F.2d 542, 547 (2d Cir. 1957).

[s]tate of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind. But that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. *There must be an indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.* (Citations omitted).

*Hahn v. Sargent,* 523 F.2d 461 (1975) (emphasis added). While the union's business agent did mention at his deposition that after the first instance of picketing ceased there was some discussion as to whether some specific subcontractors could be hired for job assignments yet unfilled, he states that these discussions ceased because Barss indicated he was going to have his own employees do that particular work. The agent then pointed out that the picket line was set up at the corporate office after Barss said he could not afford to pay his own employees prevailing wages. Thus, we cannot say that this is a situation where the union was asking Barss to cease doing business with other contractors. As noted by the district court, the complaint deals with picketing only of the primary employer, with the message directed only at him and his company. Appellant did submit affidavits with his opposition, but they do not contain any promise of the production of the requisite quantum of evidence which could defeat summary judgment on the issue of secondary boycott picketing. On the contrary, they fortified the union's contention of a legitimate "area standard" informational picket. The district court's decision is affirmed.

*Affirmed.*