**Ova HOLBROOK, Plaintiff–Appellant,**

v.

**HARMAN AUTOMOTIVE, INC., Defendant–Appellee.**

**No. 94–5194.**

United States Court of Appeals, Sixth Circuit.

Argued March 7, 1995.

Decided June 22, 1995.

**224**

Peter Alliman (argued and briefed), Madisonville, TN, for plaintiff-appellant.

Robert R. Davies (argued), Daryl R. Fansler (briefed), Stokes & Fansler, Knoxville, TN, H. Alan Arfken, Jr., Arfken & Elliott, Chattanooga, TN, for defendant-appellee.

Before: KENNEDY, KRUPANSKY, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

This is an appeal from the district court's grant of summary judgment in favor of the defendant in this defamation action. Because the record is devoid of evidence tending to establish an essential element of the plaintiff's cause of action, we affirm.

## I.

Defendant-appellee Harman Automotive, Inc. ("Harman") fired plaintiff-appellant Ova Holbrook from his position on the assembly line at Harman's Sevierville, Tennessee automotive part plant. The termination occurred during a contentious union organization campaign in which Holbrook vocally supported the unionization effort. Shortly before firing Holbrook, Harman's management employees discovered that some of the mirror housings being produced at the plant contained defects. Personnel manager Von Merritt, with the help of two other members of Harman's management, investigated the product damage. Merritt periodically updated Fred Loepp, the manager of the Sevierville plant, about the progress of the investigation. Loepp, however, did not participate in the investigation. Merritt eventually reported to Loepp that Holbrook had sabotaged the mirror housings in question and recommended that Harman therefore terminate Holbrook's employment. Based on Merritt's suggestion, Loepp fired Holbrook and informed him that his employment had been terminated for "sabotaging [the] production line."

In response to rumors that more sabotage was forthcoming and the union organizing committee's distribution of a flier condemning Holbrook's firing, Loepp, with the assistance of an attorney, drafted a memo ("Loepp memo") that was distributed to plant employees. The Loepp memo criticized the union for "continuing to exploit the termination of Ova Holbrook's employment" and for failing to "com[e] out strongly against *intentional* damaging of product and any other attempt to hurt our company." The memo went on to state that Harman "owe[s] it to you ... to be firm and take immediate action against anyone ... who decides to intentionally damage ... the products we make." The memo then decried a variety of "low tactics on the part of union supporters" and added, "[t]he last thing we need is for anyone to do things to hurt our products."

Holbrook, invoking the district court's diversity jurisdiction, sued Harman in federal district court in Tennessee. His complaint alleged that the Loepp memo contained false, defamatory, and malicious allegations. His suit was not based on the distribution of the Loepp memo to Harman employees; instead, it was based on the subsequent dissemination of the memo in his community. The complaint named only Harman as a defendant and alleged that the company was vicariously liable—under the doctrine of *respondeat superior*—for Loepp's publication of the Loepp memo. The complaint made no mention of any other Harman management employees or their communications with Loepp.

The district court granted summary judgment in Harman's favor. One of the several grounds upon which the district court rested its order was that the publication of the Loepp memo was conditionally privileged. The district court ruled that, because the Loepp memo was not published with "actual malice," the conditional privilege had not been abused, and it therefore defeated Holbrook's cause of action. Holbrook challenges this determination and the other bases upon which the district court relied in granting summary judgment in Harman's favor.

## II.

In reviewing the district court's grant of summary judgment, we proceed *de novo.* *Equal Employment Opportunity Comm'n v. Univ. of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate if the pleadings, affidavits, and fruits of discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment will be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When, as here, a federal district court exercises diversity jurisdiction, it applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 71–80, 58 S.Ct. 817, 818–23, 82 L.Ed. 1188 (1938). Thus, the substantive law of Tennessee governs. When a defamation action is based on an utterance that is related to a labor-management dispute and is made in the context of that dispute, however, federal law supplants state law with respect to the degree of fault that a plaintiff must establish. *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 64–65, 86 S.Ct. 657, 663–64, 15 L.Ed.2d 582 (1966). Under *Linn,* a plaintiff must prove, in addition to the elements set out by state law, that the defendant published the statement in question with "actual malice" as that term is defined in *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964), and its progeny. *Linn,* 383 U.S. at 64–65, 86 S.Ct. at 663–64; *Barss v. Tosches,* 785 F.2d 20, 21 (1st Cir.1986); *Davis Co. v. United Furniture Workers of America,* 674 F.2d 557, 562 (6th Cir.), *cert. denied,* 459 U.S. 968, 103 S.Ct. 296, 74 L.Ed.2d 279 (1982). Because the Loepp memo was published during, and was intimately related to, the unionization struggle at Harman's Sevierville plant, Holbrook must establish as an element of his cause of action that the Loepp memo was published with actual malice.

"Actual malice" is a term of art, the meaning of which differs from the manner in which the term is commonly understood. *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 251–52, 95 S.Ct. 465, 469–70, 42 L.Ed.2d 419 (1974). Actual malice is not synonymous with malice, a term that connotes ill-will, spite, or animosity. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510–11, 111 S.Ct. 2419, 2429–30, 115 L.Ed.2d 447 (1991); *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666, 109 S.Ct. 2678, 2685, 105 L.Ed.2d 562 (1989). To establish that a statement was published with actual malice, one must show that the publisher acted with knowledge of the statement's falsity or with reckless disregard as to its truth or falsity. *New York Times,* 376 U.S. at 279–280, 84 S.Ct. at 725–26.

As his complaint and briefs make clear, Holbrook seeks to hold Harman liable for Loepp's publication of the Loepp memo. At oral argument, however, Holbrook's counsel urged us to find that Loepp's subordinates—who supplied the information upon which Loepp based his decision to fire Holbrook—acted with actual malice and to impute that actual malice to Harman. We will not make the inquiry that Holbrook's counsel urges because where, as here, the defendant is an institution rather than an individual, the question is whether the individual responsible for the statement's publication acted with the requisite culpable state of mind. *See New York Times,* 376 U.S. at 287, 84 S.Ct. at 729–30 ("the state of mind required for actual malice would have to be brought home to the persons in the ... organization having responsibility for the publication"); *Flotech, Inc. v. E.I. Du Pont de Nemours & Co.,* 814 F.2d 775, 781 (1st Cir.1987); *Speer v. Ottaway Newspapers, Inc.,* 828 F.2d 475, 477–78 (8th Cir.1987), *cert. denied,* 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988); *Waskow v. Associated Press,* 462 F.2d 1173, 1175 n. 4 (D.C.Cir.1972). Because Loepp was the Harman employee responsible for the publication of the allegedly defamatory statements, we focus solely on his state of mind.

We stress that Holbrook's theory throughout has been that Harman is liable due to Loepp's publication of the memo. Had Holbrook instead argued that Harman is liable

due to the communications from Loepp's subordinates to Loepp, we would focus on the state of mind of those subordinates. The fact that Holbrook could have advanced such a theory belies his suggestion that an organization could insulate itself from defamation liability by always ensuring that the ultimate publisher, *e.g.,* a company spokesperson, remains ignorant of the truth. If a plaintiff could prove that the agent of the organization who supplied the information to the ultimate publisher acted with actual malice, he could maintain an action against the organization based on the communication to the ultimate publisher.

■ While Holbrook's contention that Harman "trumped up" the sabotage charges as a pretext to justify firing him might be construed as an argument that Loepp knew that the memo contained falsehoods, the record is devoid of any suggestion that Loepp actually knew that the memo contained false allegations. The question thus becomes whether Loepp acted with reckless disregard for the possibility that his statements might be false. To establish that a publisher acted with reckless disregard for the truth, a plaintiff must show that the publisher in fact "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 1965 n. 30, 80 L.Ed.2d 502 (1984). This is a subjective standard that focuses on the state of the publisher's mind at the time of publication. *Harte–Hanks Communications,* 491 U.S. at 688, 109 S.Ct. at 2696.

Holbrook contends that he presented sufficient evidence to create a genuine dispute as to whether Loepp acted with reckless disregard for the truth of the contents of the memo. He points mainly to shortcomings in the product damage investigation performed by Merritt and his two colleagues. He also points to the fact that the Tennessee Department of Employment Security ("TDES") granted his application for unemployment benefits upon finding that Harman "simply did not carry the [preponderance of the evidence] burden of proof to established (sic) misconduct under the law."

This argument is wide of the mark. Our inquiry is whether Loepp doubted the assertions he made in the memo. Any inadequacy of the investigation that led to Holbrook's firing is irrelevant unless Loepp knew of the inadequacy, and it was of such a magnitude as to cause him to doubt the information he received. *See, e.g., Harte–Hanks Communications,* 491 U.S. at 688, 109 S.Ct. at 2696. There is no indication that Loepp—whose deposition testimony indicates that he acted in reliance on three long-time trusted management employees—was aware of any such inadequacy. The TDES determination upon which Holbrook relies took place months after Loepp published the memo and could have had no bearing on Loepp's state of mind at the time of publication.

■ Holbrook has failed to point to any record evidence from which one could infer that Loepp doubted the truth of the statements in the memo. Even construing the evidence in Holbrook's favor, the record indicates that from the moment he decided to fire Holbrook, Loepp never doubted that Holbrook had in fact engaged in sabotage.[1] Holbrook has failed to carry his burden of establishing the existence of a genuine dispute over whether Loepp published the memo with actual malice. Since actual malice is an essential element of Holbrook's cause of action, Harman is entitled to summary judgment.

### III.

We need not address the alternative bases upon which the district court rested its summary judgment order. For the reason dis-

---

1. We reject, however, the district court's holding that the *res judicata* effect of a National Labor Relations Board (NLRB) determination that Harman in fact fired Holbrook for sabotage precluded Holbrook from arguing that Loepp published the memo with actual malice. Because the NLRB determination was not the product of an adjudicatory hearing, that determination is not to be treated as preclusive. *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 586 (6th Cir. 1994).

cussed above, the order of the district court is **affirmed.**