74 F.3d 1240
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alfred W. CYTACKI and Walter S. Cytacki, Plaintiffs-Appellants,
v.
AP PARTS MANUFACTURING COMPANY, a Delaware corporation;
Roger M. Slotkin, Defendants-Appellees.
 No. 94-2274.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1996.
 
 Before: MARTIN, JONES, Circuit Judges, and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 This is a diversity case arising out of Michigan. Plaintiffs Alfred W. Cytacki (Alfred) and Walter S. Cytacki (Walter) brought suit against Defendants AP Parts Manufacturing Company ("AP") and Roger M. Slotkin under Michigan contract and tort law. The district court dismissed most of the Cytackis' claims, and eventually granted summary judgment to Defendants on the remaining claims. We uphold these dispositions.
 
 
 2
 This suit stems from a stock transaction gone awry. The Cytackis, a father (Alfred) and son (Walter) tandem, were approached by Philip Levin of Consulting Resources Associates, Inc. ("CRA") regarding a takeover of Tuffy Associates Corporation ("Tuffy"). Tuffy is owned by three shareholders, and operates a chain of auto repair shops known as "Tuffy Muffler." Levin introduced the Cytackis to Roger Slotkin, who served as Tuffy's chairman. Slotkin, who had power of attorney to act on behalf of the shareholders, expressed an interest in a stock transaction. Ultimately, on January 22, 1992, the Cytackis secured an option to purchase Tuffy's stock for $2,500,000 (Tuffy Option). J.A. at 49. Under the terms of the Tuffy Option, the Cytackis would tender $2,000,000 of the purchase price up front and subsequently issue a promissory note for $500,000. Id. at 50. The option was to expire on April 10, 1992.
 
 
 3
 After securing the Tuffy Option, the Cytackis searched for an investor to help them finance the deal. On April 2, 1992, they entered into an oral agreement with Duane Rao, president of RAO Corporation ("RAO"). RAO operates the "Metro 25" chain of tire centers. Under the oral agreement, Rao would provide $300,000 in financing in exchange for half of the Cytackis' rights under the Tuffy Option. J.A. at 439-40.
 
 
 4
 Tuffy, however, was not satisfied with the Cytackis' efforts to finance the stock sale. As a result, Keenan Moran, President of Tuffy, arranged a meeting between Walter and Tom Thibert, Vice-President of AP. AP provided Tuffy's stores with mufflers and auto parts, which brought AP $1,250,000 in profits annually. On April 3, 1992, a meeting was held between Walter, Thibert, Moran, and Rao. Although Rao outlined his plans for investing in Tuffy, Thibert sought to exclude Rao, a competitor, from the acquisition. Shortly after the meeting, Thibert allegedly called Walter on his cellular telephone and offered full financing of the arrangement if Walter would invest $250,000 in capital. On April 5, 1992, Thibert reiterated his offer to Walter and his attorney.
 
 
 5
 On April 10, 1992, Walter and Thibert entered into an "Agreement" whereby Walter would invest $250,000 and obtain a release from the oral agreement with Rao. J.A. at 306. In return, AP would invest $500,000 and "use its best efforts to obtain bank financing." Id. at 307. Consequently, the parties would each acquire one-half ownership of Tuffy. Id. at 297.
 
 
 6
 On April 20, 1992, Walter and Thibert met with Todd Myers, a vice-president in charge of financing at Ohio Citizens Bank ("OCB"), to discuss financing. OCB had previously loaned Tuffy $1,000,000, and was interested in financing the proposed takeover. Myers offered to finance the Tuffy Option if AP and Slotkin would enter into a joint and several guaranty for both the financing and Tuffy's outstanding loan. In turn, Myers and OCB requested Walter's financial statement. That day, AP secured an extension on the Tuffy Option until May 11, 1992.
 
 
 7
 The Cytacki-AP venture began to deteriorate after the OCB talks. Walter provided AP with an unsigned copy of his personal financial statement. The statement assessed Walter's worth at $2,055,000. J.A. at 1135. After reviewing the statement, Thibert and Myers found it inadequate to meet the obligations under the proposed financing arrangement. Both believed that further guarantees would be necessary. On April 28, 1992, AP's Board of Directors authorized Thibert to invest $500,000 in the venture. On April 29, 1992, AP's lawyer called Walter's lawyer to impose two additional conditions on the Agreement. The first condition was that the Cytackis obtain a $1,250,000 letter of credit. The second condition was that Walter would neither become a salaried employee nor participate in the daily operations of Tuffy. Relying on the language of the written agreement, Walter's lawyer refused to comply. Despite the Cytackis' efforts to obtain AP's performance, or alternatively, a release from the Agreement, the Tuffy Option expired. The Cytackis filed suit against AP the same day.
 
 
 8
 After filing their complaint, the Cytackis suspected that Slotkin had spoken with Thibert about an AP buyout of Tuffy before the Tuffy Option expired. Paragraph 4(b) of the Tuffy Option prohibited Tuffy from "negotiating with any other party with respect to [acquisition of Tuffy] without the prior written consent of the Cytackis." J.A. at 177.
 
 
 9
 The Cytackis then filed a First Amended Complaint which charged Slotkin with breach of the Tuffy Option. J.A. at 105.
 
 
 10
 On May 17, 1993, AP moved for summary judgment and/or dismissal of the suit. On April 25, 1994, after nearly a year of discovery, the district court granted AP's motion on all counts except the breach of contract claims against AP. On May 6, 1994, the Cytackis moved for reconsideration, and the court then reinstated the breach of contract claim against Slotkin. On May 10, 1994, AP moved for summary judgment on the contract claim. The district court granted it, reasoning that Walter's ability to obtain a letter of credit was an implied condition of the Agreement, and that Walter had failed to comply with this condition. J.A. at 618. Likewise, on September 12, 1994 Slotkin moved for summary judgment on the claim against him. The district court granted Slotkin's motion, explaining that Slotkin was not personally bound by the Tuffy Option, and additionally, that Slotkin never exceeded his authority as Tuffy's agent. J.A. at 218-19. This effectively ended the Cytackis' suit. On appeal, they argue that the district court's decisions were in error. We disagree.
 
 
 11
 We will review the district court's summary judgment orders first. "We review a district court's grant [or denial] of summary judgment de novo." Russo v. Cincinnati, 953 F.2d 1036, 1041 (6th Cir.1992) (citing Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 498 U.S. 940 (1990)). "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.... 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).
 
 
 12
 The Cytackis contend that the district court erred in granting summary judgment to AP on their breach of contract claim because, contrary to the district court's findings, the additional conditions imposed on April 29, 1992 were not a part of the contract. We look to Michigan law to decide this issue. Holbrook v. Harman Automotive, 58 F.3d 222, 225 (6th Cir.1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 71-80 (1938)) (where federal court exercises diversity jurisdiction, it applies the substantive law of the state). Whether the parties intended for an implied condition to exist depends on " 'the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." Mackie v. State Farm Mutual Automobile Ins. Co., 164 N.W.2d 777, 779-80 (Mich.Ct.App.1968) (quoting Knox v. Knox, 59 N.W.2d 108, 112 (Mich.1953)). Accordingly, "[f]ailure to satisfy a condition precedent prevents a cause of action for failure of performance." Christman Co. v. Anthony S. Brown Dev. Co., 533 N.W.2d 838, 840 (Mich.Ct.App.1995).
 
 
 13
 We believe that the Cytacki-AP Agreement required Walter to share financial responsibility equally with AP. A reasonable interpretation of the contract compels the conclusion that Walter's ability to carry half of the financial burden was an implied condition, and specifically, that the April 29 requirement flowed from that condition. See Reed v. Citizens Ins. Co. of America, 499 N.W.2d 22, 24 (Mich.Ct.App.1993) (noting that courts are not inclined to construe stipulations of contract as conditions precedent unless compelled by the terms of the contract); Mackie, 164 N.W.2d at 780. Walter certainly could not have expected to gain half ownership in a multimillion dollar enterprise for a $250,000 cash investment. Thus, because Walter had failed to provide acceptable financing, AP was excused from performance. See Christman Co., 533 N.W.2d at 840. The Cytackis, however, argue that the circumstances under which the contract was formed and the questions surrounding AP's actual intent regarding the additional conditions create genuine issues of material fact to withstand AP's Motion for Summary Judgment. We are not persuaded. According to the Cytackis, Thibert's representations on April 3, 1992 and April 5, 1992 constituted a promise on the part of AP to provide full financing for the Tuffy buyout. Under Michigan law, " 'even where the [contract] is not ambiguous on its face, the circumstances under which the parties contract may be looked at to establish an ambiguity ... and the common knowledge and the understanding of the parties themselves as shown by their previous negotiations is sometimes such a circumstance." Stark v. Budwarker, Inc., 181 N.W.2d 298, 302 (Mich.Ct.App.1970) (quoting Restatement of Contracts, Sec. 242, cmt. (a)). In a similar vein, the Cytackis allege that Thibert's prior negotiations should be incorporated into the Agreement to cancel out the implied condition of the letter of credit.
 
 
 14
 Stark, however, is not applicable here. Paragraph 2 of the Agreement clearly obligates Walter to guarantee a share of the financing for the Tuffy buyout. J.A. at 139-40. This provision notwithstanding, the Cytackis seek an interpretation based on prior talks with Thibert which directly contravenes this provision. "Previous negotiations cannot give to an integrated agreement a meaning completely alien to anything its words can possibly express." Restatement, Contracts Sec. 242 cmt. (a). Therefore, the implied condition that Walter obtain a letter of credit must stand despite the representations made by Thibert. Consequently, we must uphold the district court's grant of summary judgment to AP.
 
 
 15
 Furthermore, we conclude that the district court did not err in granting summary judgment to Slotkin on the contract claim against him. Michigan law holds that where an agent executes a contract on behalf of his principal, he may not be held personally liable on the contract unless he acts outside the scope of his authority. Brusslan v. Larsen, 150 N.W.2d 525, 527 (Mich.Ct.App.1967). Alternatively, a plaintiff who brings a contractual claim against an agent must prove either that the agent consented to be bound, or that the plaintiff was neither aware nor informed that the agent was representing a principal. See Restatement (Second) Agency, Sec. 321 cmt. (a). The Cytackis have not produced evidence to create a genuine issue of material fact in this regard. The Cytackis' failure to carry this burden warrants an award of summary judgment to Slotkin. Kraft v. United States, 991 F.2d 292, 296 (6th Cir.), cert. denied, 114 S.Ct. 467 (1993) (moving party bears burden of conclusively showing that no genuine issue of material fact exists).
 
 
 16
 We now must determine whether the district court properly dismissed the Cytackis' fraud and negligent misrepresentation claims against AP for failure to state a claim. "This court reviews de novo a dismissal of a complaint pursuant to Rule 12(b)(6)." Mann v. Conlin, 22 F.3d 100, 103 (6th Cir.), cert. denied, 115 S.Ct. 193 (1994). This court may uphold a Rule 12(b)(6) motion for failure to state a claim if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of its claims that would entitle it to relief." American Eagle Credit Corp. v. Gaskins, 920 F.2d 352, 353 (6th Cir.1990) (emphasis added). In reviewing the dismissal, however, the court must assess the facts underlying the complaint in a light most favorable to the plaintiff. Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir.1995). After applying these principles to the case at bar, we stand by the district court's decision.
 
 
 17
 In order to maintain a fraud claim in Michigan, a claimant must prove:
 
 
 18
 (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.
 
 
 19
 Kassab v. Michigan Basic Property Ins. Ass'n, 491 N.W.2d 545, reh'g denied, 491 N.W.2d 545, 548 (Mich.1992). The Cytackis charge that AP's agent, Thibert, fraudulently promised to perform a future act. This claim, however, should be brought in contract and not in tort. See Michigan Nat'l Bank v. Holland-Dozier-Holland Sound Studios, 250 N.W.2d 532, 535 (Mich.Ct.App.1976) (remedy for failure to perform future act lies in a suit for breach of contract).
 
 
 20
 The district court's dismissal of the Cytackis' negligent misrepresentation claim was also correct. The state of Michigan does not recognize such a claim in tort. Ulrich v. Federal Land Bank, 480 N.W.2d 910 (Mich.Ct.App.1991) (cited in J.A. at 189). As the court points out, the Cytackis' claim should have been brought under breach of contract law. J.A. at 189. Therefore, the district court's dismissals must stand.
 
 
 21
 The Cytackis' last argument on appeal is that the district court erred in denying their Motion for Reconsideration of Counts I, II and III. Such claims are generally reviewed for an abuse of discretion. See e.g., Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir.1986). Under the law of this circuit, "[a] district court abuses its discretion only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 30 (6th Cir.1988). Based on the foregoing analysis, we do not believe that the district court's decision compels a reversal in favor of the Cytackis.
 
 
 22
 The Cytackis' appeal fails on each ground. We AFFIRM the district court.
 
 
 
 *
 The Honorable Robert Holmes Bell, District Judge, United States District Court for the Western District of Michigan, sitting by designation