*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEWART KNOEPP, MD,

      Plaintiff-Appellant,

v

IHA HEALTH SERVICES CORPORATION, INC.,

      Defendant-Appellee.

UNPUBLISHED
September 14, 2023

No. 362282
Washtenaw Circuit Court
LC No. 18-001235-CK

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

This appeal arises from defendant's termination of plaintiff's employment. Plaintiff, Dr. Stewart Knoepp, appeals as of right a judgment of no cause of action entered in favor of defendant, IHA Health Services Corporation, Inc. (IHA), after a jury trial. For the reasons provided below, we affirm.

## I. BACKGROUND

Plaintiff, a pathologist, was hired to work at Michigan Multispecialty Physicians (MMP) in 2011. Defendant agreed to hire the physicians of MMP, resulting in MMP wrapping up its business and the physicians becoming employees of defendant in 2013. The employment agreement between plaintiff and defendant provides, in pertinent part:

> 7. **Non-competition**. The Practice and the Physician are entering into this Agreement, after considerable consideration, with the expectation that the relationship will be mutually successful and very long term. Both parties agree to act in good faith to preserve and maintain the relationship including the use of mediation and alternative dispute resolution approaches as needed. Except when the Physician's employment is terminated by the Practice without cause and pursuant to Section 9(a)(i) of this Agreement, during the period ending one (1) year after the end of the Employment Term, the Physician shall not, directly or indirectly . . . establish, own, operate, or manage a practice or provide physician services within a ten mile radius of any of the clinical facilities of the Practice used as a primary practice site (Physician's Office as set forth on Exhibit A or, if none,

-1-

Reichert Health Building 5333 McAuley Drive, Ypsilanti, MI), unless the Physician changes his or her primary practice site) where the Physician worked while employed by the Practice. . . .

* * *

9. **Termination of Employment**. (a) This Agreement may be terminated:

(i) At any time, by either the Practice or Physician, for any reason, provided that the party terminating the Agreement must deliver written notice of termination to the other party at least one hundred twenty (120) days prior to the effective date of the termination.

(ii) By the Practice upon ten (10) days prior written notice to the Physician for the following reasons: (a) the material failure of the Physician, in the Practice's reasonable judgment, to perform competently his or her duties under this Agreement; (b) conduct by the Physician which, in the Practice's reasonable judgment, materially impairs the reputation or standing of the Practice; (c) the failure to maintain sufficient Continuing Education Credits as determined by the Michigan Board of Medicine; or (d) the material uncured breach by the Physician of any term, provision or condition of this Agreement; provided however, that the Practice may not terminate this Agreement for any of the preceding reasons if the Physician corrects the matter within such ten (10) days after receiving such written notice describing the particular matter.

* * *

(b) The termination of employment by the Practice for acts or activities of Physician specified in clauses (ii) through (x) above shall be deemed for all purposes to be a termination "for cause." Any termination by the Practice under clauses (ii)-(ix) above shall require the affirmative vote of not less than a majority of the members of the Divisional or Department Team.

(c) In the event of any termination under this Section 9, the Physician shall continue to receive compensation under Section 4 of this Agreement through the effective date of such termination, provided that, if such termination is not immediately effective, the Physician continues to provide services as required under this Agreement through the effective date of such termination (if so required by the Practice).

Plaintiff was later assigned to be the medical director of the lab at St. Mary's Hospital in Livonia. Plaintiff found the position challenging. In response to plaintiff's concerns, Dr. Paul Valenstein, the then division chair of pathology at IHA, offered plaintiff an extra three to five vacation days because the director position at St. Mary's lab seemed to be "more difficult than other jobs in our department." Plaintiff chose three days as the amount of extra compensation.

-2-

At some point later, the pathologists as a group decided to eliminate the extra compensation for the St. Mary's role, but in order to alleviate some of that position's work load, that director was no longer required to attend certain meetings. Plaintiff was not happy with the decision to eliminate his extra vacation days and continued to complain to other pathologists about this decision for many months afterward. Dr. Valenstein testified that he received complaints from colleagues that plaintiff had been raising this issue repeatedly. In an e-mail dated November 3, 2016, Dr. Valenstein informed plaintiff that he was at his "wit's end" with plaintiff's complaining about the issue and that plaintiff needed to accept the decision of the group and move on. Despite Dr. Valenstein's suggestion to move on, plaintiff responded to the e-mail, raising the same issue.

Dr. Valenstein planned to retire on June 30, 2017. In anticipation of his retirement, Dr. Valenstein stepped down from his chair position, and Dr. Angela Bartley was selected to become the division chair. Plaintiff continued to complain "all the time" to other pathologists about how he "worked harder than everyone else." This led to a February 24, 2017 meeting between Dr. Bartley, Dr. Valenstein, and plaintiff, in which Drs. Bartley and Valenstein informed plaintiff that his behavior was disruptive and needed to stop. When he was asked what he thought after hearing this, plaintiff said that their "conclusion is wrong." Plaintiff maintained, "I'm allowed to speak. I'm an adult and I'm [a] 47 year-old man. I mean, I'm allowed to express my feelings and you have not . . . convinced me that I have handled myself in a manner that it's [sic] anything other than the upmost in professionalism." Dr. Bartley stressed that they did not need to convince plaintiff of anything—he just needed to stop expressing dissatisfaction to the group. When Dr. Bartley expressed that the reason for the meeting was that the group felt that plaintiff's expression of his level of dissatisfaction had exceeded typical office banter, plaintiff replied, "I don't accept that."

Dr. Bartley and Dr. Valenstein both thought that the meeting did not go well, with plaintiff basically denying any responsibility for his behavior. The following day, Drs. Bartley and Valenstein sent plaintiff a letter summarizing the meeting—that plaintiff's repeated complaints were disruptive and needed to stop. The letter warned that in the event

> there is any future incident where you exhibit disruptive conduct, which includes, but is not limited to, loud outbursts or repeated discussions of dissatisfaction with work distribution, duties, or final group decisions, such conduct will be investigated and if substantiated will lead to disciplinary action up to and including termination of employment with IHA.

According to defendant, plaintiff continued to exhibit disruptive behavior, including at an April 2018 meeting. After this April meeting, Dr. Bartley recommended to the Chief Medical Officer at IHA, Dr. Mohammed Salameh, that plaintiff's employment be terminated, and Dr. Salameh agreed. Dr. Salameh met with plaintiff on May 11, 2018, and informed him that his employment was being terminated without cause. Dr. Salameh handed plaintiff a termination letter, which stated that he was being terminated pursuant to § 9(a)(i) of the employment agreement, effective September 8, 2018. Although the letter noted that defendant did not *require* plaintiff to actively work during this intervening paid 120-day period, plaintiff was not *permitted* to work during this period. Defendant retrieved plaintiff's badge and keys at the May 11 meeting.

Within the first two weeks of receiving the termination letter, plaintiff looked for other jobs, but there were no viable jobs within a reasonable driving distance. Plaintiff first applied for a job on October 31, 2018, and applied for other jobs in June 2019. There were no substantive responses to any of the applications. Notably, none of those prospective employers notified plaintiff that he did not get the job because of the manner of termination at IHA. Plaintiff eventually obtained part-time employment in early 2020 and obtained full-time employment at Sparrow Hospital in Lansing in May 2021.

Plaintiff filed the instant action on November 30, 2018, alleging many counts, but only his breach-of-contract claim is at issue in this appeal. The parties filed competing motions for summary disposition. With respect to the breach-of-contract claim, plaintiff argued that defendant breached § 7 of the employment agreement by failing to act in good faith, failing to engage in mediation or alternative dispute resolution (ADR), and failing to maintain the expectation of a "very long term" relationship. Plaintiff also argued that defendant was not allowed to terminate plaintiff's employment without cause because, read as a whole, the contract created a reasonable expectation that employment would not be terminated arbitrarily or without cause. Plaintiff further argued that even if defendant properly invoked § 9(a)(i)'s no-cause termination, it failed to comply with the 120-day notice requirement because that requirement contemplates that the employee be permitted to work during this period. Finally, plaintiff argued that his termination was in fact a for-cause termination under § 9(a)(ii) that was "dressed up" as a without-cause termination because the reasons for termination—plaintiff's unprofessional behavior—fall under two express for-cause clauses in the contract.

The trial court partially granted plaintiff's motion. The court determined that defendant breached the contractual obligation to mediate with plaintiff and that defendant breached the obligation to provide 120 days' notice. The court opined that "notice" contemplates being able to work during this notice period, which plaintiff was not permitted to do. However, the court rejected plaintiff's argument that he was only subject to termination for cause and instead ruled that plaintiff's employment was terminable without cause under § 9(a)(i) on the contract.

The case proceeded to trial on this limited basis and the parties filed various motions in limine. Of relevance to this appeal, plaintiff moved to preclude evidence or argument that he was required to prove that mediation would have been successful to recover damages. Plaintiff argued that because he had already established a breach, all that was left for him to prove was the quantum of damages. The trial court disagreed, stating:

> There still needs to be the element of causation, and this is where I think the burden is on [plaintiff] to demonstrate that [mediation] would have made a difference; that he would have been able to preserve his employment. And I say proof, we're talking about a preponderance of the evidence that had IHA honored its obligation to mediate, then [plaintiff] would have been able to do what was necessary.

> \* \* \*

> The mere fact -- I'll try to be very direct with respect to your answer. He's not entitled to damages just because they didn't mediate.

There was little evidence presented at trial to show how plaintiff was damaged by defendant's breaches of (1) failing to allow plaintiff to work during the 120-day notice period, and (2) failing to mediate. Regarding the failure to allow plaintiff to work during the 120-day notice period, there was no evidence that he applied for any jobs during this period, and no evidence that he was denied any other employment because he was not allowed to work during this 120-day period. Notably, plaintiff was paid his salary during this period.

There likewise was scant evidence that mediation would have been successful. The primary evidence came from plaintiff himself, who stated that "mediation would have made a huge difference" and that he felt it would have been successful because if he had known what his behavior issues were, he would have addressed them in an attempt to save his job. On the other hand, many defense witnesses, including the two key decision-makers, Dr. Salameh and Dr. Bartley, testified that mediation would not have altered the outcome.

After plaintiff rested his case, defendant moved for a directed verdict, arguing that there was no evidence that any of its breaches caused plaintiff any damages. At the end of his response to defendant's motion, plaintiff's attorney asked the trial court to take judicial notice "of the fact that arbitration or mediation does work." Plaintiff noted that the circuit court's own website provides that "[m]ediation often results in settlement." Plaintiff's counsel also cited information from the State Court Administrative Office, which indicated that 59% of cases where mediation was held led to settlement, and that 93% percent of judges and 78% of attorneys found mediation to be an effective method for resolving disputes. In reply, defendant noted that with respect to judicial notice of the effectiveness of mediation, the parties in this case had actually gone to mediation after the commencement of this lawsuit, yet they still went to trial. The trial court denied defendant's motion for a direct verdict and denied plaintiff's request to take judicial notice.

At the conclusion of the trial, the jury answered the following two questions on the verdict form in the negative:

      1.     If Dr. Knoepp and IHA had mediated prior to Dr. Koepp's termination, would Dr. Knoepp have remained employed with IHA?

      2.     Did Dr. Knoepp suffer any damages as a result of IHA not allowing him to work during the 120-day notice period?

This resulted in the trial court entering a judgment of no cause of action in favor of defendant.

Plaintiff moved for a new trial, arguing that the trial court erred by requiring him to prove that he was damaged by the failure to mediate. Plaintiff averred that such a ruling required him to present evidence "about an alternative universe where Defendant never committed the breach of contract in the first place," which was an impossible burden. Plaintiff further contended that this erroneous ruling was carried over into the special verdict form, which asked the jury if plaintiff would have saved his job had mediation occurred. Lastly, plaintiff argued that having introduced this "impossible requirement," the trial court compounded the error by excluding relevant evidence that would have assisted plaintiff in attempting to carry this burden. Specifically, the court should not have denied plaintiff's request to take judicial notice of the efficacy of mediation. The trial court denied the motion, stating that the pertinent issues were fairly framed for the jury. And

regarding the failure to take judicial notice, the court reiterated that it would not be appropriate to take judicial notice of something just because it appears on the circuit court's website. This appeal followed.

## II. ANALYSIS

### A. CONDITION PRECEDENT

Plaintiff argues that the trial court erred by failing to interpret the provisions in the contract to mediate and to supply 120 days of notice as conditions precedent, as opposed to a promise. Without meeting these conditions first, plaintiff argues, defendant did not have the right to terminate plaintiff. We disagree.

We review a trial court's decision on a motion for summary disposition de novo. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). Likewise, the proper interpretation of a contract is a question of law this Court reviews de novo. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004).

In *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), our Supreme Court explained:

> Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . . [*Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (cleaned up).]

As mentioned earlier, § 7 of the employment agreement between plaintiff and defendant provides:

> 7. **Non-competition**. The Practice and the Physician are entering into this Agreement, after considerable consideration, with the expectation that the relationship will be mutually successful and very long term. *Both parties agree to act in good faith to preserve and maintain the relationship including the use of mediation and alternative dispute resolution approaches as needed*. Except when the Physician's employment is terminated by the Practice without cause and pursuant to Section 9(a)(i) of this Agreement, during the period ending one (1) year after the end of the Employment Term, the Physician shall not, directly or indirectly . . . establish, own, operate, or manage a practice or provide physician services within a ten mile radius of any of the clinical facilities of the Practice used as a primary practice site (Physician's Office as set forth on Exhibit A or, if none, Reichert Health Building 5333 McAuley Drive, Ypsilanti, MI), unless the Physician changes his or her primary practice site) where the Physician worked while employed by the Practice. . . . [Emphasis added.]

Additionally, § 9 states:

> 9. **Termination of Employment**. (a) This Agreement may be terminated:
>
> (i) At any time, by either the Practice or Physician, for any reason, *provided that the party terminating the Agreement must deliver written notice of termination to the other party at least one hundred twenty (120) days prior to the effective date of the termination.* [Emphasis added.]

"A 'condition precedent' is a condition that must be met by one party before the other party is obligated to perform[.]" *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 411; 646 NW2d 170 (2002). "A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor." *Knox v Knox*, 337 Mich 109, 118; 59 NW2d 108 (1953). "[U]nless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Real Estate One v Heller*, 272 Mich App 174, 179; 724 NW2d 738 (2006).

The mediation clause states that "[b]oth parties agree to act in good faith to preserve and maintain the relationship including the use of mediation and alternative dispute resolution approaches as needed." The phrase "agree to act" makes it clear that this is a promise explaining how the parties are expected to act and not a mere condition. The parties *promised* to act in good faith to preserve the employment relationship, including the use of mediation and ADR as needed. In other words, this promise created a right or duty, see *Knox*, 337 Mich at 118, and it is this promise that the trial court determined defendant breached. The trial court did not err by characterizing the provision as a promise or covenant instead of a condition.[1]

Likewise, the provision regarding the 120-day notice also is a promise. The parties agreed that in the event either one wanted to terminate the employment, the terminating party would provide 120 days' notice. This is a promise, not a condition. And even if it was arguable that it was a condition instead of a promise, the language does not clearly express that it is a condition, and courts will not read such terms to be conditions absent clear language. *Real Estate One*, 272 Mich App at 179.

---

[1] Defendant argues that the trial court erred by denying its motion for summary disposition and interpreting § 7 as having any effect in a termination context. Defendant stresses that § 7 is titled "**Non-competition**," while § 9, titled "**Termination of Employment**," addresses any requirements for terminating employment. Defendant also argues that the trial court erred when it denied defendant's motion for summary disposition regarding its purported breach of the failure to provide 120 days' notice because there is no requirement in the contract that an employee must be allowed to work during this notice period. Although defendant's arguments may have merit, defendant did not file a cross-appeal challenging that decision of the trial court. Therefore, we decline to address them. See *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 351; 725 NW2d 684 (2006) ("Although filing a cross-appeal is not necessary to argue an alternative basis for affirming the trial court's decision, the failure to do so generally precludes an appellee from raising an issue not appealed by the appellant.").

Moreover, plaintiff has waived this issue. "A party cannot take on position in the trial court and then take a contrary position on appeal." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003). While responding to defendant's motion for summary disposition in the trial court, plaintiff asserted that defendant "clearly breached" the mediation clause and "breached" the notice clause. And when plaintiff for the first time averred that these clauses were "conditions" in his motion for a new trial, plaintiff still maintained that the trial court "properly granted summary disposition recognizing these failures [i.e., the failure to undertake mediation and the failure to give 120 days' notice] were breaches of the contract." Even in this Court, plaintiff asserts that "[t]he trial court was clearly correct in concluding on summary disposition for plaintiff that IHA breached the ADR and Notice requirements of the agreement." One can only breach promises or covenants, not conditions, because conditions do not create any duty or obligation to breach. See *Knox*, 337 Mich at 118.

Therefore, the trial court did not err by characterizing the mediation phrase and the notice phrase in the employment contract as promises or covenants instead of conditions.

## B. TERMINATION WITHOUT CAUSE

Plaintiff also argues that the trial court erred when it declined to characterize his termination as a for-cause termination under § 9(a)(ii) of the employment agreement. We disagree.

At issue is the proper interpretation of § 9 of the employment agreement. Plaintiff argues that because the reason for his termination, i.e., his disruptiveness in the workplace, is an enumerated reason under § 9(a)(ii), defendant was required to terminate under that provision, which in turn required other procedures, such as an affirmative majority vote of the members of the entire department team under § 9(b). Plaintiff's position is not supported by the plain and unambiguous language of the contract. The contract provides two avenues for termination: (1) without cause under § 9(a)(i), and (2) with cause under § 9(a)(ii). Even assuming that plaintiff's conduct did qualify as a for-cause reason for termination under § 9(a)(ii), defendant was not obligated to utilize for-cause termination. Section 9(a)(i) unambiguously states that termination can be effectuated under that clause "for *any* reason" (emphasis added), which necessarily includes any reasons listed in § 9(a)(ii). See *In re Forfeiture of $5,264*, 432 Mich 242, 249-250; 439 NW2d 246 (1989) (defining "any" to be "every"). Quite simply, §§ 9(a)(i) and 9(a)(ii) are alternate avenues available to defendant, and it could choose which one to use. The fact that defendant may select between the two options does not create an ambiguity in the contract. See *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999) (stating that courts will not create ambiguities when the terms of the contract are clear).

Plaintiff primarily relies on § 9(b)'s pronouncement that "[t]he termination of employment by the Practice for acts or activities of Physician specified in clauses (ii) through (x) above shall be deemed for all purposes to be a termination 'for cause.' " However, that reliance is misplaced because all that provision conveys is that any termination that took place under § 9(a)(ii)-(x) is deemed to be a termination "for cause." Contrary to plaintiff's assertion, it does not compel defendant to utilize those provisions.

-8-

## C. CAUSATION AND DAMAGES

Plaintiff further argues that the trial court erred by requiring him to prove that he would have remained employed had mediation been utilized and that he would have found a new job had he been able to work during the 120-day notice period. We disagree.

Because a verdict form is considered part of the package of jury instructions, an issue with the verdict form is considered a claim of instructional error. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). This Court reviews claims of instructional error de novo. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). But a trial court's decision whether to take judicial notice is reviewed for an abuse of discretion. *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013).

In order to succeed on a claim for breach of contract, a plaintiff must prove by a preponderance of the evidence the following: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "[C]ausation of damages is an essential element of any breach of contract action . . . ." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). In other words, "the plaintiff must establish a causal link between the asserted breach of contract and the claimed damages." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 118-119; 839 NW2d 223 (2013). Further, the party asserting a breach of contract has the burden of proving its damages with reasonable certainty instead of conjecture or speculation. *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). But damages are not speculative simply because they cannot be ascertained with mathematical precision. *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005).

Before trial, the trial court had already ruled that defendant breached the contract when it failed to mediate with plaintiff and when it failed to provide 120 days' working notice to plaintiff. Thus, the first two elements of plaintiff's breach-of-contract claim were already established, leaving only the last element for the jury to consider. Consistent with this ruling, the verdict form asked the jury the following questions:

> 1. If Dr. Knoepp and IHA had mediated prior to Dr. Koepp's termination, would Dr. Knoepp have remained employed with IHA?
>
> 2. Did Dr. Knoepp suffer any damages as a result of IHA not allowing him to work during the 120-day notice period?

Plaintiff argues that this was erroneous, but his argument is not very clear. With respect to the mediation question, he seems to suggest that mediation could have served other functions, such as resulting in reassignment or ongoing counseling. But plaintiff's argument fails to acknowledge that if he were still employed at IHA, even with reassignment or counseling, then there presumably would be no damages because he would still be receiving the same pay, and conversely, he is suffering damages precisely because he is no longer employed there. Additionally, plaintiff's own expert's theory of damages was premised on lost income calculations with plaintiff continuing to work at IHA for many years. In other words, plaintiff not being employed by IHA and losing that

associated income was causing the damages. Consequently, the trial court did not err by asking the jury to determine if plaintiff would have remained employed had mediation been utilized.

Likewise, we perceive no error in the question about the 120-day notice period. The trial court determined that defendant breached the promise to provide 120 days' notice, in which plaintiff would be allowed to actively work. But plaintiff still had the burden to prove what, if any, damages he suffered as a result of that breach. Because he was no longer working at IHA, the only logical way for him to be damaged from that is if it affected his ability to obtain other employment. Plaintiff has not suggested how he was damaged any differently. Accordingly, the instructions on the verdict form were proper.

Plaintiff's position that once the court determined that defendant breached the contract, all that was left was the calculation of the quantum of damages is incorrect. As already described, plaintiff had the burden to show that any breach *caused* any damages. *Miller-Davis Co*, 495 Mich at 178; *Gorman*, 302 Mich App at 118-119. And plaintiff was also required to prove the amount of resulting damages to a reasonable certainty. *Doe*, 308 Mich App at 601. There was nothing improper about the trial court's instructions or verdict form. Contrary to plaintiff's argument on appeal, he is the one conflating in fact damages and quantum of damages. He did not prevail because the jury simply found that defendant's breaches were not the cause of any damages, which precludes recovery on a breach-of-contract claim.

Plaintiff also argues that the trial court erred by declining to take judicial notice regarding mediation. We note that this issue is not mentioned anywhere in plaintiff's statement of the questions presented, and therefore, may be deemed abandoned. See MCR 7.212(C)(5); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 7861 NW2d 293 (2008). In any event, this claim of error has no merit.

MRE 201 governs judicial notice of adjudicative facts. MRE 201(a). The type of fact that can be judicially noticed is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). Notably, in a civil action, when a fact is judicially noticed, the jury is to accept that fact "as conclusive." MRE 201(f).

In response to defendant's motion for a directed verdict, plaintiff sought to have the trial court take judicial notice that "mediation does work." In support, plaintiff relied on postings on various court websites. The trial court denied plaintiff's request, opining that taking judicial notice that "mediation works" would be going beyond what a court should do. The trial court did not abuse its discretion. Whether mediation "works" is not capable of "accurate and ready determination." Indeed, according to plaintiff's own statistics cited in the trial court, at best, the "fact" that he argued should be judicially noticed is that "mediation works some of the time." Moreover, any judicially noticeable fact must still be admissible as relevant. *Winekoff v Pospisil*, 384 Mich 260, 266; 181 NW2d 897 (1970). The fact that mediation has worked some of the time in other litigation has no bearing on whether it would have worked outside of litigation in this instance between these parties, making it irrelevant and inadmissible. See MRE 401; MRE 402. Put another way, just because mediation resulted in some success in approximately half the cases in that survey does not mean that there was a similar chance of success had mediation been

employed with these parties. Indeed, defense counsel pointed out that during the pendency of *this* very case, mediation failed. The trial court appropriately viewed plaintiff's request as "going beyond what . . . the Court should do."

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel